Sentenced, in accord with the verdict, to suffer death for the murder of Irving Schwarzenholz, Ernest Tyler appealed. Appellant did not file a brief, and we consider the assignments in his motion for new trial.
Mr. and Mrs. Schwarzenholz resided at 2642 Lockridge, Kansas City, Missouri. About 4:00 A.M. August 16, 1940, Mrs. Schwarzenholz was of opinion she heard something in the house. She pinched her husband, awakening him, and whispered her thoughts to him. They both sat up in bed. A noise was again heard. Mr. Schwarzenholz said: "I am going to see what is in there;" and started for the light switch, about a step from the bed. Mrs. Schwarzenholz saw the form of a man in front of a window in the adjoining room. Just as the lights went on a shot was fired and a bullet pierced both of Mrs. Schwarzenholz's legs. She saw a negro, who lunged at her husband and shot him. Her husband fell. The negro looked at her and fled. Mrs. Schwarzenholz managed to call the officers. She and her husband were taken to a hospital. The lethal bullet was removed from the body of Mr. Schwarzenholz at a post mortem that morning. Other essential facts are developed in ruling the issues presented.
[1] An assignment reads: "The court erred in admitting incompetent evidence, concerning the alleged confession, alleged to have been made by defendant, without a hearing thereon, which hearing was demanded by defendant, concerning its voluntary or involuntary nature, before the admission of the said statement in evidence." If this implies a preliminary inquiry was not had before appellant's confessions (he made two written confessions) were admitted in evidence, it is refuted by the record as the court afforded appellant an opportunity for a full hearing, outside the presence of the jury, on the voluntary or involuntary nature of the confessions and after hearing appellant's evidence on the issue admitted the confessions in evidence. Later, in the presentation of his defense, appellant again developed his contention that his statements and confessions were involuntary. The State's evidence being contra, the statements and confessions were admissible, their voluntary or involuntary nature being for the jury under proper instructions. It follows that error in admitting evidence on behalf of the State concerning the voluntary nature of appellant's statements against interest, including the voluntary nature of appellant's confessions, over objections and requests *Page 170 
for a preliminary inquiry by appellant on their involuntary nature prior to the hearing thereon outside the presence of the jury was harmless and nonprejudicial under the instant record. State v. Menz, 341 Mo. 74, 91(V), 106 S.W.2d 440, 448 [11-13] (where after hearing evidence making the issue one for the jury at a preliminary inquiry, the court refused to hear defendant's evidence on the issue and defendant later adduced such evidence as a part of his defense); State v. Thomas, 250 Mo. 189, 209, 157 S.W. 330, 334[9]. Appellant does not and under the record could not successfully contend that the confessions were inadmissible. A safer practice for the State, under our view, would be to grant an accused's request for a preliminary inquiry, if made, upon his objecting to the admission of evidence concerning a confession on the ground the confession was involuntary and rule on the admissibility of such evidence at the first opportunity. State v. Gibilterra, 342 Mo. 577, 584, 116 S.W.2d 88, 93[2]. State v. Williamson, 339 Mo. 1038, 1048[4], 99 S.W.2d 76, 81, pointed out that to refuse an accused a preliminary inquiry and restrict him to a showing before the jury with respect to the voluntary or involuntary nature of his purported confession would violate his constitutional and statutory rights with respect to testifying (Sec. 23, Art. 2, Mo. Const.; Sec. 4081, R.S. 1939). Such rights, however, may be waived.
[2] Appellant's complaints that the ballistics and the fingerprints experts were not qualified expert witnesses must be overruled. We find no objection of record questioning their testimonial qualifications. In fact, appellant's counsel's opening sentence on cross-examination of the fingerprints expert was: "Mr. Raney, from the testimony you have given this morning, you have qualified, I believe, sufficiently so, as an expert technician on what we call `fingerprinting.'" Consult State v. Shawley, 334 Mo. 352, 363, 67 S.W.2d 74, 80[1]; State v. Richetti, 342 Mo. 1015, 1031[4]. [780] 119 S.W.2d 330, 338[68]; Evans v. Commonwealth, 230 Ky. 411, 417,19 S.W.2d 1091, 1094; 2 Wigmore on Evidence (3 Ed.), p. 396, Sec. 417a, p. 640, Secs. 560, 561; 2 Wharton on Criminal Evidence (11 Ed.), p. 1690. Secs. 959, 967; 23 C.J.S., p. 68, Sec. 858 c, d. The State developed the training and experience of said witnesses before interrogating them concerning the case at hand.
[3] Appellant says there was no evidence that he ever possessed the gun used in the homicide and the admission of the gun in evidence was error. This, of course, falls with the admission of appellant's confession of guilt, wherein he identified the gun. There was additional evidence bearing on the subject matter; for instance, among other facts, appellant's fingerprints were on a window from which the screen had been removed by the offender in effecting an entrance into the Schwarzenholz home, and Mrs. Schwarzenholz testified she *Page 171 
saw the features of the offender fairly well and appellant "answers to that description."
[4] When certain photographs of bullets (the bullet taken from the body of Mr. Schwarzenholz and a test bullet fired from the revolver used in the commission of the homicide) were offered to the jury, appellant's counsel moved for a mistrial on the stated ground two jurors were discussing the photographs. The State denied any misconduct. At the time there was no showing or offer to show improper and prejudicial conduct on the part of any juror. After the verdict counsel asked that the jury be polled and asked certain named jurors, collectively, if they had discussed certain exhibits while in the jury box. The answers were in the negative. (Consult State v. Westmoreland (Mo.), 126 S.W.2d 202, 204[13]; State v. Underwood, 57 Mo. 40, 51.) The record does not disclose reversible error. [23 C.J.S., p. 1028, Sec. 1367.]
[5] The indictment, in addition to charging murder in the first degree, contained allegations under the habitual criminal statute (Sec. 4854, R.S. 1939, Mo. St. Ann., p. 3063, Sec. 4461), which were sustained by substantial evidence. The verdict, which is questioned by appellant, read: "We, the jury, find the defendant, Ernest Tyler, at the county of Jackson and State of Missouri, was convicted and sentenced to five years in the State Penitentiary at Jefferson City, Missouri, on felony charges and that he was thereafter duly discharged from said institution upon compliance with said sentence; and we further find . . . [here follows an identical finding with respect to a second conviction, etc.]; and we further find the defendant, Ernest Tyler, guilty of murder in the first degree and assess his punishment at death." This verdict, under the authorities, is sufficient both as to the finding under the habitual criminal act (State v. Ortell (Mo.), 50 S.W.2d 1037[2]), and the offense charged (State v. Jackson (Mo.), 253 S.W. 734[10]).
[6] Appellant's point that evidence of his prior convictions for felonies was incompetent without the State first establishing that such felonies had been committed is without merit. Section 4854, R.S. 1939, Mo. St. Ann., p. 3063, Sec. 4461, conditions the punishment therein provided for a second or subsequent offense by the same person upon his prior conviction of an offense punishable by imprisonment in the penitentiary and discharge therefrom. The legality of the prior conviction or the facts involved are not made constitutive factors. [Consult 24 C.J.S., p. 1159, nn. 74, 75.] The State established appellant's prior convictions by court records and his discharge by certified copies of his prison record, et cetera, which procedure has been approved. State v. Walker (Mo.), 46 S.W.2d 569, 570[1]; State v. Stanton (Mo.), 68 S.W.2d 811, 813[9, 10]; State v. Dalton (Mo.), 23 S.W.2d 1, 5[11]; State v. English, 308 Mo. 695, 706(III), 274 S.W. 470, 473[8]. *Page 172 
[7] An assignment of error "in giving instructions one to — in that they do not fully cover the law in this case" has been held insufficient to present any issue for appellate review. State v. Boyer, 342 Mo. 64, 72[8], 112 S.W.2d 575, 580[9]; State v. Bagby, 338 Mo. 951, 965 (VII), 93 S.W.2d 241, 249[17, 18]; State v. Rosegrant, 338 Mo. 1153, 1174[9], 93 S.W.2d 961, 973 [20].
[8] The assignment that appellant "has discovered new and material evidence which it was impossible to obtain prior to defendant's trial, which if heard will materially affect defendant's cause" does not prove itself and, unsupported by any showing of record, is insufficient. State v. McGee, 336 Mo. 1082, 1102(XII), 83 S.W.2d 98, 110[45]; State v. Hohensee,333 Mo. 161, 166[4], 62 S.W.2d 436, 439[5]; State v. Rose,339 Mo. 317, 324, 96 S.W.2d 498, [781] 502[1]; State v. Bunch,333 Mo. 20, 25[6], 62 S.W.2d 439, 442[9].
[9] The indictment was filed September 6, 1940. It was signed "W.W. Graves, Prosecuting Attorney." In appellant's motion for new trial, for the first time, the indictment is questioned for the stated reason that it was not signed by the prosecuting attorney of Jackson county (Sec. 3929, R.S. 1939, Mo. St. Ann., p. 3144, Sec. 3540), the motion alleging that said Graves had been ousted from said office on September 3, 1940, and from and after said date had no legal status as such prosecuting attorney. There is no showing with respect to the issue in the instant record; but the point has reference to a ruling of this court in quo warranto proceedings removing Graves from the office of prosecuting attorney of Jackson county, Missouri. [State on inf. of McKittrick, Attorney General, v. Waller W. Graves, prosecuting attorney (Banc), 346 Mo. 990, 144 S.W.2d 91.] Our official report (346 Mo. 990) gives the date of the ruling "November 9, 1940;" but our records disclose that the original opinion was handed down and filed on September 3, 1940, and that respondent Graves' motion for rehearing was overruled on November 9, 1940. [See 144 S.W.2d 91.] Graves had been elected in 1938 for a two-year term expiring, in the ordinary course of events, December 31, 1940. Section 12989, R.S. 1939, Mo. St. Ann., p. 617, Sec. 11363, provides: "If any vacancy shall happen from any cause in the office of . . . prosecuting attorney . . ., the governor, upon being satisfied that such vacancy exists, shall appoint some competent person to fill the same . . ." [See also Sec. 11509, R.S. 1939, Mo. St. Ann., p. 3704, Sec. 10216.] Section 12988, R.S. 1939, Mo. St. Ann., p. 617, Sec. 11362, provides: "The . . . prosecuting attorneys . . . shall be commissioned by the governor, and shall hold their offices until their successors are elected, commissioned and qualified." [See also Sec. 12934, R.S. 1939, Mo. St. Ann., p. 597, Sec. 11309.] Section 12820, R.S. 1939, Mo. St. Ann., p. 6141, Sec. 11196, reads: "All officers elected or appointed by the authority *Page 173 
of the laws of this state shall hold their offices until their successors are elected or appointed, commissioned and qualified." Our constitution, Art. 14, Sec. 5, also provides: "In the absence of any contrary provision, all officers now or hereafter elected or appointed, subject to the right of resignation, shall hold office during their official terms, and until their successors shall be duly elected or appointed and qualified." These (and possibly other) statutory and constitutional provisions are designed to and evidence a public policy on the part of the State to prevent an interregnum between the termination of an incumbent's right to an office or the expiration of his official term and the qualification of his successor in the public interest. Prosecuting Attorney Graves was not a mere usurper or intruder and, whatever may have been his legal status as between himself and the State, we are of opinion that, if not a de jure
officer, he was at least a de facto officer (see State ex rel. v. Smith, 345 Mo. 1158, 1165, 139 S.W.2d 929, 933[5-8], defined) during the interim between the filing of the original opinion ousting him from office and the determination of his motion for rehearing thereon, no successor having been appointed, commissioned and qualified, in so far as the public and third persons may be concerned, and such acts of an official nature as he may have performed during said period are not null and void and may not be successfully first attacked in a motion for new trial by an accused after taking his chances with and being disappointed by the verdict of the jury. Consult State v. Swinney, 25 Mo. App. 347, 348; State ex rel. v. Drain,335 Mo. 741, 745[1], 73 S.W.2d 804, 805[2]; Priest v. Lawrence,16 Mo. App. 409, 411; and observations in State ex rel. v. Hermann,11 Mo. App. 43, 49. See also Sawyer v. State, 94 Fla. 60, 82, 113 So. 736, 744[14]. The indictment fully informed appellant of the offense charged and there is no contention that he was prejudiced in any substantial right by the occurrence. [See Sec. 3952, R.S. 1939, Mo. St. Ann., p. 3160, Sec. 3563.]
We find no reversible error of record proper. The judgment is, therefore, affirmed. Westhues and Barrett, CC., concur.