260 S.W.2d 14 (1953)
STATE
v.
HANDS.
No. 43478.
Supreme Court of Missouri, Division No. 1.
July 13, 1953.
*16 Sidney M. Glazer, St. Louis, for appellant.
John M. Dalton, Atty. Gen., Frank W. Hayes, Asst. Atty. Gen., for respondent.
DALTON, Judge.
Defendant was convicted of robbery in the first degree by means of a dangerous and deadly weapon under the habitual criminal act and was sentenced to imprisonment in the state penitentiary for the remainder of his natural life. Sections 560.135 and 556.280 RSMo 1949, V.A.M.S. He has appealed.
The state's evidence shows that Mike and Meyer Goldstein operated a grocery store at 3400 Lucas avenue in the city of St. Louis. On Friday evening, January 26, 1951, about 7:20 p. m., Mike Goldstein was behind the check-out counter of the store and had just finished waiting on Frank Burnett, a customer, when two colored men entered. One of them, later identified as Alonzo Hands and as the defendant on trial in the court below, pulled out a gun and held it on Mike and told him it was a holdup. Mike was frightened and shrieked in fear. The other colored man, later identified as Milton Reynolds, went behind Mike, grabbed hold of him, held him and put something up against his back. The disturbance attracted the attention of Meyer Goldstein, who was behind the meat counter at the rear of the store. Two clerks, John Richardson and Theodore Douglas, were in the store during the robbery. The man with the gun tried but was unable to open the cash register, so he forced Mike to open it. This robber then *17 took $485 in currency and silver from the cash register and he also took from beneath the counter a cigar box containing an Elgin wrist watch, a Benrus wrist watch, a Helbros wrist watch and a magnifying glass, articles belonging to customers of the store, but held as security for grocery accounts.
On the same evening, about 7:50 p. m., four city detectives went to 3635 Windsor street in the city of St. Louis. Two of them went to the rear door and two (Rung and Sullivan) went to the front door of the building where they identified themselves as police officers and inquired for Alonzo Hands. They were admitted by appellant's brother Harold Hands, who accompanied them to appellant's room on the second floor of the building. As they arrived on the second floor, appellant came out of his room and slammed the door behind him, but not before the officers had seen Milton Reynolds therein. Appellant was placed under arrest along with Milton Reynolds. The officers searched Reynolds and found two rolls of nickels on him. Appellant refused to accompany the officers and both appellant and Reynolds joined in a fight with the officers and were shot by them. Appellant and Reynolds fell to the floor in the room they were in when the officers arrived. On top of the bed in this room and on the floor the officers found $173 in currency, and under a blanket on the bed the officers found $32.75 in loose silver, a loaded pistol with extra cartridges and also three watches and a magnifying glass which were subsequently identified as the articles in the cigar box taken from the Goldstein store. A total of $209.65 in money was found, including the two rolls of nickels. Appellant was reaching under the blanket of the bed and had refused to stop when he was shot.
Appellant and Reynolds, after they were wounded, were promptly taken to the Homer G. Phillips Hospital where, within an hour after the holdup, appellant was identified by Mike and Meyer Goldstein, John Richardson and Frank Burnett as being the robber that held the pistol at the time of the robbery. Theodore Douglas did not accompany the other witnesses to the hospital. Appellant was also identified at the trial by Mike Goldstein, John Richardson and Frank Burnett as being the robber that held the gun. Meyer Goldstein said that the men he saw at the hospital looked like the robbers. Reynolds was identified as appellant's companion and a participant in the robbery. At the hospital the officers took $155 in currency from appellant's right front trouser's pocket.
Appellant did not testify in his own defense but Reynolds, who was also charged by a separate information with the same offense, testified that he used the gun and conducted the robbery in question; that he was assisted by one Ernest Caldwell; that, after the robbery, he, Reynolds, had gone to appellant's home to get a hat and jacket and change clothes; and that he put the gun, silver and watches under the blanket and the currency on the bed when the police arrived.
Appellant first contends that "the court erred in failing to give to the jury an instruction dealing with the law of circumstantial evidence * * * as there was no direct evidence identifying the defendant as to three of the prior convictions offered in evidence." Five prior felony convictions (all in the Circuit Court of the City of St. Louis) were shown, together with imprisonment and discharge upon lawful compliance with the respective sentences. The various convictions were in the name of Alonzo Hands and appellant (named in the information here as Alonzo Maurice Hands) was shown to have been the very person imprisoned in the workhouse of the city of St. Louis under the first two convictions. The city workhouse records showed appellant was "received at the city workhouse 11-17-37." This record further showed: "Alonzo Hands, given address, of 3635 Windsor. Colored. Age, 17. Male. * * * Baptist. * * * farmer. Single. Born in America. Five foot eight and a half inches tall. Weight, a hundred and forty-three pounds." No witness testified that the appellant was the person convicted and who served the sentences in the last three convictions shown. The several alleged convictions of appellant and the service of sentences and discharges therefrom were submitted to the jury in an instruction framed in the disjunctive so that a finding *18 of only one of the several prior felony convictions, service and discharge was necessary to require the imposition of the maximum term of imprisonment in the event appellant was found guilty of the instant robbery charge.
Throughout the trial of this cause appellant was continuously referred to as "Alonzo Hands." His own counsel referred to him as Alonzo Hands. Witness Reynolds referred to appellant as Maurice Hands. The certified copy of the records from the Missouri state penitentiary with reference to the Alonzo Hands who served the sentences in the last three cases showed the following: "Alonzo Hands Colored Age 20 Nativity Missouri Trade Farmer Height 5 feet 8½ inches. Length of foot, inches 10½ Hair B & K Eyes Maroon Complexion Medium Brown Education 8 grades Weight 150 lbs. * * * When received March 28, 1940."
At the close of all the evidence and prior to the submission of the cause, appellant's counsel objected to the court's failure to give "an instruction on the law of circumstantial evidence." In the motion for a new trial appellant said, "the court erred in failing to give the jury a circumstantial evidence instruction." There was no reference at any time to the specific matter now presented, to wit, that the identity of appellant with the person named in the last three prior convictions was based upon circumstantial evidence and that an instruction thereon was required. Proof of the substantive offense here was not based upon circumstantial evidence, but it was based upon direct testimony of witnesses who saw the robbery committed and who identified the robbers. Appellant admits that "a charge of a prior conviction has been said not to constitute a part of the substantive offense. State v. Ward, 356 Mo. 499, 202 S.W.2d 46, 49," but appellant insists that since prior convictions, in so far as they affect punishment, must be alleged and proved as other facts, the appellant was entitled to an instruction on circumstantial evidence on the issue of identity as far as the last three convictions were concerned. However, the evidence in question was direct evidence that appellant had been so convicted, had served the sentences and had been discharged on compliance therewith. State v. Pigg, 312 Mo. 212, 278 S.W. 1030, 1034; State v. Blankenship, 330 Mo. 792, 50 S.W.2d 1024, 1026. Further, it has often been held that "the middle name of an individual forms no part of the Christian name." State v. Martin, 10 Mo. 391; Keaton v. Jorndt, 220 Mo. 117, 133, 119 S.W. 629; Miller v. Keaton, 236 Mo. 694, 710, 139 S.W. 158. The record showed the age and description of the person who served the sentences under both the first two and the last three convictions and appellant had been shown to be the person who served the first two sentences. It was therefore unnecessary to rely solely upon the rule that the identity of the names was prima facie sufficient evidence of the identity of the persons, so that it devolved upon him who would deny identity to overcome the presumption. State v. Court, 225 Mo. 609, 125 S.W. 451; State v. Brinkley, 354 Mo. 337, 189 S.W.2d 314, 334. No instruction on circumstantial evidence was required.
Appellant assigns error on the four verdict forms furnished by the court to the jury. Appellant says that "each verdict form contained the following. `Five P. C. Robbery, first degree, DDW which constituted a comment on the evidence." Appellant also complains that the form selected and signed by the jury "assumed the fact of prior convictions and implored the jury in essence to sentence the defendant to the penitentiary for the remainder of his life." The forms of verdict furnished to the jury, as certified by the Clerk of the Circuit Court, show the style of the cause, the court, venue and charge, the latter, as follows: "On information for 5 prior convictions and robbery 1st degree by means of a dangerous and deadly weapon." The particular form of verdict was then set out below. Four different verdict forms were furnished, including one without a finding of prior convictions and with a blank space for the designation of punishment and one for a finding of not guilty. The form selected and used by the jury (heading omitted) was as follows: "We the jury in the above entitled cause, find the defendant *19 guilty of Robbery first degree with a dangerous and deadly weapon and we further find that defendant has been formerly convicted of felonies and served and completed sentence thereon and assess his punishment at imprisonment in the State Penitentiary for the remainder of his Natural Life." We do not consider any of the verdict forms to constitute "a comment on the evidence by the court." The caption of the forms merely named the case, the court, the venue and the charge, which was necessarily well known to the jury prior to the submission of the case. Since various forms were submitted from which the jury could select the one to express their findings, and, since some forms contained the recital of prior convictions and some did not, the mere selection and use by the jury of the one signed and returned forms no basis for the complaint that this form "assumed the fact of prior convictions and implored the jury" to so sentence the defendant. The use of no particular form was suggested and the forms submitted suggested no particular kind of punishment over any other punishment of a different type, as in the case of State v. Randolph, Mo. Sup., 39 S.W.2d 769, 773, upon which appellant particularly relies. We find nothing in this record to indicate that the forms of verdict submitted were misleading or tended to fetter the free exercise of discretion by the jury. State v. Davis, 342 Mo. 594, 116 S.W.2d 110, 113. Nor do we believe the appellant could have been or was prejudiced by the forms of verdict submitted.
Appellant assigns error on the court's refusal to reprimand the assistant circuit attorney and to declare a mistrial because of alleged improper closing argument and statements of fact outside of the record. As stated, the defense in this case was that the robbery in question was committed by Milton Reynolds and Ernest Caldwell. The state sought, on cross-examination, to show by Reynolds that Caldwell had been shot and was dead, but Reynolds said he didn't know about it. There was no suggestion as to when death might have occurred. Reynolds did testify that he had not seen Caldwell since the night of the robbery, January 26, 1951, and the trial started November 5, 1951. In argument counsel for the state stated with reference to Reynolds, "He comes in and he names a dead man." On objection and a request for a mistrial the court said, "There is no evidence that he named a dead man." The jury was instructed to disregard the argument, but a mistrial was denied. Appellant's theory is that the remark of counsel for the state "destroyed his defense", State v. Brown, 247 Mo. 715, 729, 153 S.W. 1027, and was so highly prejudicial that the direction to disregard, as requested, could not remedy the matter and the only proper relief was to declare a mistrial as was also requested. The matter was within the sound discretion of the trial judge. State v. Tiedt, 360 Mo. 594, 229 S.W.2d 582, 588; State v. Graves, 352 Mo. 1102, 182 S.W.2d 46, 57; State v. Willhite, Mo.Sup., 159 S. W.2d 768, 769. The record fails to show an abuse of discretion in refusing to declare mistrial or in ruling other assignments presented with reference to the closing argument for the state.
Appellant contends that the court erred in giving Instruction No. 4, a concert of action instruction, for the reason that the evidence did not warrant such an instruction and because it was calculated to mislead and suggested to the jury to find defendant guilty if he assisted Milton Reynolds in any manner after the latter committed a crime. Appellant refers to "the struggle which Reynolds and defendant had with the police officers" as evidence of such assistance after the crime had been committed. The state's evidence tended to show that appellant and Reynolds committed the robbery; and that in the progress of the robbery appellant placed his gun on the counter and gave his attention to securing the money and property in question, while Reynolds held Mike Goldstein and held something against his back to keep him from interfering with appellant's action. In such a situation the instruction was proper and was supported by evidence. State v. Dowell, 331 Mo. 1060, 55 S.W.2d 975, 976(5); State v. Friedman, 313 Mo. 88, 280 S.W. 1023, 1024; State v. Wagner, 312 Mo. 124, 279 S.W. 30, 33(5). We find nothing in the instruction that would tend to mislead *20 or to authorize the jury to find appellant guilty on the ground that he had cooperated with Reynolds in resisting arrest after Reynolds and Carter had committed the robbery.
Appellant contends that "the court erred * * * in allowing the state to endorse William Boeger as a witness * * * during the trial for the reason that the defendant was thereby unable to take his deposition prior to trial and was unable to properly prepare his defense in the case." Over defendant's objection Mr. Boeger, the assistant warden of the city workhouse, was endorsed as a witness "in view of the absence of Clarence Weismantel, the warden," and for the stated purpose of identifying records showing defendant's compliance with sentences and to make identification. Appellant says that he was "deprived of the right of developing any impeaching evidence against Boeger"; that he was deprived of the "effective right of cross-examination of this witness"; that this witness identified appellant and testified that Alonzo Hands mentioned in a workhouse record was the Alonzo Maurice Hands on trial in this case; and that without the testimony there would have been no direct evidence that Alonzo Hands was Alonzo Maurice Hands, the defendant in the cause. The only grounds mentioned at the time of the endorsement were that it was a "last minute" endorsement and that "I would have had the right to have taken his deposition." This objection was overruled and the endorsement ordered. No affidavit of suprise was filed, nor was there any request for continuance or delay either at the time of the endorsement or after Boeger had testified. The matter of the endorsement of the witness was within the sound discretion of the trial court. State v. Baker, 318 Mo. 542, 300 S.W. 699, 701; State v. Farris, Mo.Sup., 243 S.W.2d 983, 986. On this record no abuse of discretion or unfairness to appellant appears.
Appellant contends that the court erred "in refusing to declare a mistrial after Sergeant Arthur Sullivan stated that he went to the home of the defendant to arrest him on a robbery charge." Counsel for the state in his opening statement had (without objection) told the jury that the state would prove the police officers went to defendant's home and identified themselves to him as such and told him "he was under arrest in connection with the holdup of the Goldstein Market." Thereafter, officer Sullivan testified: "I identified myself to Mr. Hands that I was a police officer and told him I wanted him to come down to headquarters for investigation, suspected of a robbery." The objection was, "Object to any statements and ask that they be stricken and the jury disregard, and a mistrial be declared." Outside of the presence of the jury, defendant's counsel stated: "He just stated what he arrested the defendant for. He can't do that * * * that is invading the province of the jury." The objection was overruled. Appellant now contends that this was "a hearsay statement of the police department that they believed the defendant is guilty of the robbery of the Goldstein Market," or that they "had reason to believe that the defendant participated in the holdup of the Goldstein Market." Appellant further says "the statement by the officer that defendant was under arrest suspected of robbery is hearsay"; that the matter is "similar in nature to an undenied accusation made by a third party in defendant's presence"; and that the evidence is inadmissible because the accused is under no duty to speak. State v. Kissinger, 343 Mo. 781, 123 S.W.2d 81, 83(4); State v. Bowdry, 346 Mo. 1090, 145 S.W.2d 127, 129.
The court did not err in refusing to strike the statement or declare a mistrial. The evidence concerned a part of the facts and circumstances attending the arrest of the defendant and was competent evidence bearing upon the question of guilt or innocence. State v. Hardin, 324 Mo. 28, 21 S.W.2d 758, 761; State v. Wilkins, Mo. Sup., 100 S.W.2d 889, 895; State v. Garner, 360 Mo. 50, 226 S.W.2d 604, 609(7); 22 C.J.S., Criminal Law, § 628, p. 962. It directly tended to show that defendant knew he was under arrest and knew the basis therefor at the time he resisted arrest and joined Reynolds in a fight with the officers.
Appellant contends that the court erred in admitting State's Exhibit No. 12 *21 identified as "A Workhouse Card" because it "contained incompetent hearsay evidence which showed prior convictions." After the Circuit Court records of prior convictions of Alonzo Hands were in evidence, William Boeger, assistant to the warden and in charge of the records kept at the city workhouse of the city of St. Louis, identified State's Exhibit No. 12 as the original, official record card with reference to Alonzo Hands, as kept by the city workhouse in the regular course of its business concerning prisoners received and confined therein. Defendant objected to the introduction of the card on the ground that all of the information thereon was hearsay and that the state could not show by the card when defendant was received and on what charge or to show compliance with the sentence. There was no objection on the ground that the card "showed prior convictions." The record was clearly competent to show when the defendant was received and when discharged and that the sentence under which he was confined had been complied with. State v. Walker, Mo.Sup., 46 S.W.2d 569, 570; State v. Tyler, 349 Mo. 167, 159 S.W.2d 777, 780; State v. Hagerman, 361 Mo. 994, 238 S.W.2d 327, 330.
Appellant further contends that the court erred in admitting State's Exhibit No. 13, identified as a penitentiary transcript, because it "did not on its face show that it related to defendant and it also contained incompetent hearsay evidence as to an alleged commutation of a sentence." The first contention was not presented when the exhibit was offered and received in evidence and it may not be presented now. The transcript showed that the Alonzo Hands, described as hereinbefore shown, was received on March 28, 1942. It further showed "60 days additional merit time allowed April 21, 1942. Discharged under conditional commutation by Governor Donnell May 22, 1942. Commutation revoked September the 17th, 1942. Returned to prison December the 16th, 1948. 17 days additional merit time allowed. * * * Discharged under commutation of sentence by Governor Smith, September the 26th, 1949." The record shows that the objection was that the record in the Governor's office or the paper commutating the sentences would be the best evidence of commutations; and that "the whole record is hearsay." The exhibit being a certified copy of the records of the state penitentiary where defendant was confined was competent to show the service of sentence and discharge therefrom on completion of sentence. State v. Walker, supra; State v. Tyler, supra.
Appellant contends that "the court erred in failing to sustain the defendant's motion in the nature of a demurrer to the evidence filed at the close of the entire case, in view of the fact that there was insufficient evidence to support the charge that the defendant had been convicted, sentenced and discharged under five prior convictions." The matter sought to be presented has not been preserved for review. At the close of all the evidence defendant moved the court "to instruct the jury to enter a verdict of not guilty." The sufficiency of the evidence to establish the several prior convictions and discharges or any of them was not tested by defendant in the trial of the cause. The court could not properly have directed a verdict of not guilty if the evidence of all prior convictions and discharges had been wholly insufficient. Proof of prior convictions and discharges on compliance with sentences only affect punishment and not guilt. State v. Farris, supra.
Appellant further contends that "the court erred in failing to instruct the jury on all the law applicable to the case, particularly on the law of receiving stolen property, and on the law of accessory after the fact." It is contended that the evidence warranted such instructions. Only the matter of an instruction on receiving stolen property has been preserved for review by an assignment in the motion for a new trial. State v. Davis, Mo.Sup., 196 S.W.2d 629. We have heretofore reviewed the evidence. There is no evidence in the record sufficient to support an instruction on receiving stolen property and no such instruction was required. There is no evidence that Reynolds *22 gave any stolen property to the appellant, or that the appellant received any stolen property from Reynolds or from any one else, or that appellant was guilty of the crime of receiving stolen property. Section 560.270 RSMo 1949, V.A.M.S.; State v. Day, 339 Mo. 74, 95 S.W.2d 1183; State v. Richmond, 186 Mo. 71, 84 S.W. 880.
Appellant contends that "the court erred in failing to instruct the jury on robbery first degree without a dangerous and deadly weapon." There is no merit in this contention, because the state's evidence shows robbery by appellant and Reynolds acting together and that appellant used a dangerous and deadly weapon, while defendant's evidence tends to show defendant was not present. On the evidence presented appellant was either guilty of robbery in the first degree by means of a dangerous and deadly weapon or he was not present and not guilty.
Appellant has made various other assignments of error which it will not be necessary to fully review in this opinion. We have carefully examined the record in the light of each of these assignments and in view of the authorities cited in support thereof but we find no reversible error with reference to any of these matters. The assignments include (1) an alleged comment on the evidence by the court in asking "Who is Theodore Douglas?" before ruling an objection; (2) the giving of an instruction alleged to be erroneous in assuming and not requiring the finding of a disputed fact, to wit, compliance with sentence; (3) the overruling of appellant's motion to suppress evidence after a full hearing thereon before the trial of the cause (reasonable and probable cause for the arrest was shown and the subsequent search was incident to a lawful arrest); and (4) alleged error in denying a request to renew the motion to suppress evidence following the amendment of the information fixing the date of the offense as January 26 (also the date of the arrest) rather than as January 20, 1951, as originally charged. We find no merit in any of these assignments.
The judgment is affirmed.
All concur.