**STATE of Missouri,**
**Plaintiff-Respondent,**

v.

**William Aaron PATTERSON,**
**Defendant-Appellant.**

**No. 39431.**

Missouri Court of Appeals,
Eastern District,
Division One.

March 4, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 18, 1980.

Application to Transfer Denied
June 10, 1980.

John Ashcroft, Atty. Gen., James R. Cumbee, Asst. Atty. Gen., Jefferson City, for defendant-appellant.

Robert C. Babione, Public Defender, Mary-Louise Moran, Asst. Public Defender, St. Louis, for plaintiff-respondent.

SNYDER, Judge.

Appellant William Aaron Patterson was convicted of robbery in the first degree by means of a dangerous and deadly weapon, § 560.120, RSMo 1969. Pursuant to the Second Offender Act, § 556.280, RSMo 1969, the court sentenced him to thirty years' imprisonment.

Appellant alleges that the trial court erred in: (1) allowing the state to introduce into evidence certain photographs, because they were not disclosed to the defense pursuant to its request for discovery; (2) overruling appellant's motion to suppress identification testimony based on suggestive photographic displays and a lineup identification which was improper because it was made when appellant was in a hospital and by two witnesses at the same time; (3) making a comment, while ruling on an objection, which indicated bias against appellant; (4) permitting the prosecutor to testify in his remarks; (5) finding that appellant had a prior conviction, although there was a discrepancy between his name and the name appearing on the court's records; and (6) sentencing him to thirty years' imprisonment, because the sentence constituted cruel and unusual punishment.

The judgment is affirmed.

At about 8:30 p. m. on April 26, 1976, the Grand Ville Cocktail Lounge was robbed by a black male who rushed into the bar, fired a shot into the ceiling, and ordered the persons in the bar to lie down on the floor. At that time only Essie Summers, the owner, Barbara Johnson, a barmaid, and a male customer were in the lounge. The robber took the currency, approximately $95, from the cash register, ordered the customer to turn over his watch and ring, and searched Mrs. Summers for money, tearing her clothing. The man left after searching Mrs. Summers and the police were summoned. The robbery lasted about five minutes.

Although Mrs. Johnson, who had observed the robber as he rifled the cash register, was able to describe him to the police, Mrs. Summers was not. A few days after the robbery detectives brought to Mrs. Johnson's home a book containing different pictures of features for use in composing a sketch of the robber. Mrs. Johnson was unable to make a composite sketch. The police also came to the Grand Ville Lounge with various photographs of young black males; from these Mrs. Johnson identified appellant as the robber, and Mrs. Summers indicated that the profile view resembled the robber, although her view of the robber had been insufficient to make a positive identification.

Both women were taken to City Hospital, where appellant was confined, and viewed a lineup consisting of appellant and two or three other patients. Mrs. Johnson identified appellant as the robber, and Mrs. Summers indicated that appellant resembled the robber although she was not sure. At trial, the women could not recall whether appellant appeared in leg irons or was otherwise confined during the lineup.

Appellant offered an alibi defense. His girl friend, Joyce Matlock, and two friends testified that he was at his girl friend's home when the robbery was committed.

Appellant first contends the court abused its discretion in overruling his objection to the introduction into evidence of the photographs of suspects shown to Mrs. Johnson and Mrs. Summers because the state had failed to disclose the photographs in accordance with appellant's discovery request, thereby violating Rule 25.32. Appellant claims he was prejudiced because the failure to disclose the photographs hampered him in preparing his principal defense.

◼ Although the state failed to comply with the appellant's requests for disclosure, one of which was specifically directed to the prosecution's photographs, discovery rules do not automatically require the imposition of sanctions for nondisclosure. *State v. Davis*, 572 S.W.2d 243 (Mo.App.1978). The trial court has discretion. In *State v. Davis*, the court at pages 248 and 249 said:

> "[W]hether or not a trial court has abused its discretion in not imposing a sanction authorized by Rule 25.45 is tested in terms of the nature of the charge, the evidence presented by the state, the role which the nonproduced information would likely have played, and whether the nonproduced information was of such character that a reasonable likelihood existed that if produced earlier it would have affected the outcome of the trial."

The primary concern of the Missouri discovery rule is fundamental fairness to both parties.

◼ Applying these criteria, it is apparent that the trial judge did not abuse his discretion in allowing the evidence.[1] It is

---

1. One of the reasons for ruling that the state could introduce the photographs was the failure of appellant to comply with the state's discovery request. Appellant did not reveal that he planned to call three alibi witnesses until the day of the trial. When the state attempted to introduce the photographs into evidence, appellant's counsel objected, noting that there had been no disclosure. At that point the prosecutor noted that appellant had also failed to comply with the discovery rules by not notifying the state of his alibi witnesses. Appellant's counsel stated that she felt such neglect was excusable in that she had not been told of the witnesses until the last minute, while the state had known about the photographs throughout the discovery period. The trial judge overruled appellant's objection, stating that each side would be allowed to introduce its evidence. Appellant's counsel then requested an opportunity to voir dire the witnesses concerning the photographs, which request was denied.

true, as appellant claims, that identification is a key issue in this case. However, although appellant complains he first knew of the photographs when the prosecution offered them in evidence, he in fact had known of them earlier. The photographs were mentioned in a police report and in his amended motion to suppress identification testimony, which was filed on May 18, 1977, before the trial began. Moreover, his counsel cross-examined the witnesses about the photographs at the hearing on that motion.

Appellant cites several cases in support of his contention that the exhibit should have been excluded from the evidence. These cases are distinguishable on their facts. In *State v. Johnson*, 524 S.W.2d 97 (Mo. banc 1975) and *State v. Harrington*, 534 S.W.2d 44 (Mo. banc 1976) the court held that, because of the state's failure to disclose, the defense committed itself to a trial theory which resulted in a fundamental unfairness to the defendant upon introduction of the undisclosed evidence. In *State v. Dayton*, 535 S.W.2d 469 (Mo.App.1976), the prosecutor had withheld evidence favorable to the defendant. The court, nevertheless, found the failure to disclose to be non-prejudicial. The cases of *State v. Scott*, 479 S.W.2d 438 (Mo. banc 1972) and *State v. Stapleton*, 539 S.W.2d 655 (Mo.App.1976) involved the prosecution's failure to disclose inculpatory statements made by the defendants. In these cases the court held that the defendant had the right to be provided with his own statement in order to be prepared for the prosecutor's questioning.

The case under review is markedly different from those cases dealing with signed confessions and evidence tending to exonerate the defendant. The case of *State v. Sykes*, 559 S.W.2d 643, 646[11] (Mo.App. 1977) is more on point. In it this court held it was not error to allow the introduction of photographs of the scene of the crime which had not been disclosed in response to the defense's motion, saying the trial court had not abused its discretion in failing to apply sanctions for the non-disclosure. Although there may be no excuse for the prosecu-

tion's failure to comply with the discovery request, it cannot be said that failure to produce the pictures and receiving them into evidence resulted in fundamental unfairness to appellant. *State v. Sykes, supra.*

■ Appellant also argues that the pictures should not have been admitted because parts of the pictures had been cut off and the pictures stapled to a manila folder, so they did not appear as they had when shown to Mrs. Johnson and Mrs. Summers. The state demonstrated that nothing of importance was shown to the witnesses that was hidden from sight at the trial. Robert Schwartz, a detective assigned to the case, testified that the parts of the pictures he cut out contained a date and the subjects' LB (identification) numbers and, on their backs, Schwartz's initials and his department service number. It was not an abuse of discretion to admit these pictures into evidence in that condition. In fact, the number and date on the pictures might have prejudiced appellant by indicating to the jury that he had a criminal record.

■ Appellant next assigns error to the court's judgment overruling his "Amended Motion to Suppress Identification Testimony." He alleges that the procedures employed in obtaining the photographic identification were defective because his picture appeared in more than one set of pictures shown to the witnesses, thus imprinting his image upon their minds. According to their testimony, Mrs. Summers saw a set of photographs two or three times, and Mrs. Johnson twice at most. Appellant further argues that the hospital identification was defective because he was confined to his hospital bed during the lineup, and because the witnesses identified him in each others' presence.

■ Convictions based upon identifications are to be set aside only if the identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. U. S.*, 390 U.S. 377, 384, 88 S.Ct.

967, 971, 19 L.Ed.2d 1247, 1253 (1968); *State v. Dickerson*, 568 S.W.2d 559 (Mo. App.1978). Each case is to be evaluated in view of its own facts, and consideration must be given to the totality of surrounding circumstances. *Simmons, supra; State v. Charles*, 542 S.W.2d 606 (Mo.App.1976).

■ In *State v. Hudson*, 508 S.W.2d 707, 710 (Mo.App.1974) the court held that line-ups would be evaluated in light of

"the opportunity of the witness to view the accused at the time of the alleged crime, the accuracy of the witness's prior description of the accused, the certainty of the witness at the confrontation, the length of time between the crime and the confrontation, and the need for police to determine at the earliest opportunity whether the person suspected is in fact the person sought."

Procedures for photographic identification are to be considered with much the same factors in mind. *State v. Arnold*, 528 S.W.2d 164 (Mo.App.1975). Consideration must also "be given to (1) the presence of an independent basis of identification, (2) the absence of any suggestive influence by others, and (3) positive courtroom identifi-cation." *State v. Parker*, 458 S.W.2d 241, 244 (Mo.1970).

Mrs. Johnson testified that she had a clear view of appellant for several minutes and, although the lights were dim, she was able to remember his features. She gave the police a description of appellant when they came to the lounge immediately after the robbery. Mrs. Johnson was able to make a positive identification of appellant the first time she was shown the pictures. She also made a positive identification at the trial.

■ The length of time between the occurrence and the confrontation at the hospital was at most one week, according to Mrs. Johnson and Mrs. Summers. A delay as long as six months may not render an identification invalid. *State v. Knox*, 529 S.W.2d 455 (Mo.App.1975).

While appellant argues that the lineup procedure was suggestive because the wit-nesses identified him in each others' pres-ence, this factor will not alone invalidate an identification. Consideration must be given to other factors, such as whether the wit-nesses were fairly certain of what that per-son looked like. *Robertson v. State*, 464 S.W.2d 15 (Mo.1971). In the case under review, there was an independent basis of identification and a positive courtroom identification. There was no evidence of suggestive influence by others. The motion to suppress was properly denied.

Third, appellant claims he was prejudiced by a comment made by the court when ruling upon an objection by defense counsel. It is argued that this comment indicated to the jury that the court believed appellant committed the crime.

During the direct examination of Mrs. Johnson, the prosecutor asked,

"Q: Could you hear any conversation?

A: Yes, I did.

Q: What did you hear?

A: She told him—

MRS. MORAN: Your Honor, I object as hearsay testimony.

THE COURT: Oh no, no, not in the presence of the defendant. Overruled.

MRS. MORAN: If it was the defend-ant, your Honor.

THE COURT: Well, who knows? That's the jury's determination."

Later in the trial, defense counsel told the judge she felt the jury might construe the court's comments to indicate it believed ap-pellant was guilty. She requested the court to remind the jury that the court took no part in deciding appellant's guilt, and the court instructed the jury that they were the triers of fact.[2]

2. Appellant's attorney indicated that if the trial court would instruct the jury that they were the finders of fact, "[t]hat would be agreeable."

The court then told the jury, "Ladies and gen-tlemen of the jury, the Court would remind you that you are the finders of fact in this case."

The state correctly contends appellant failed to preserve this issue for review, because no timely objection was made, and because appellant failed to set down the statement in detail and with particularity in his motion for a new trial, as required by Rule 27.20. Appellant's motion for a new trial does not set forth which comment of the court is claimed to be error. *State v. Sawyer*, 367 S.W.2d 585 (Mo.1963); *State v. Watson*, 511 S.W.2d 890 (Mo.App.1974). The failure to specify in detail the allegedly erroneous statement precludes review except under the plain error doctrine.

In this case the statement was directed at counsel to explain a ruling on an objection, and not to the jury. Such statements are generally held not to be prejudicial. *State v. Hudson*, 358 Mo. 424, 215 S.W.2d 441, 442 (Mo.1948). Further, appellant received promptly all the relief he requested. He did not move for a mistrial or a more specific admonition from the court. The damaging effects of the court's statement were cured by the instruction given to the jury telling them that they were to decide the facts. *State v. Castino*, 264 S.W.2d 372, 375 (Mo.1954). The remark was not inherently "of such a nature as would reasonably tend to prejudice the minds of the jury against the defendant and thereby deny him a fair and impartial trial." *State v. Ross*, 371 S.W.2d 224, 228 (Mo.1963). No miscarriage of justice occurred here. Accordingly, appellant's third point is denied.

Appellant further assigns error to the court's allowing the prosecutor to make two comments that constituted unsworn testimony. The first prosecutorial comment, concerning the gun received in evidence, was objected to and the objection was sustained; moreover, the prosecutor had merely repeated the earlier testimony of a witness. Appellant cannot claim error in the court's ruling in his favor.

The prosecutor also asked Joyce Matlock, appellant's alibi witness, why she had not come forward earlier with the information that appellant was at her home the night of the robbery. Appellant's attorney stated, "Your Honor, if that question is allowed I would ask the Circuit Attorney how many times his office drops charges—." Although this was not a proper objection and preserves nothing for review, Rule 78.09, the trial court interpreted this as an objection to the implied testimony, overruled it, and told the prosecutor to proceed.

Even if appellant had preserved the point, the court's action was proper. Appellant contends the question was in effect unsworn testimony that charges against appellant would have been dropped had the witness told the prosecutor earlier of appellant's whereabouts the night of the robbery. Appellant reads too much into the question. The question, in fact, was more relevant to the issue of possible recent fabrication by the witness. The trial court in a criminal case has wide discretion as to the extent of cross-examination, especially in the area of credibility, and should use that discretion to give a certain latitude to the questions that may be asked by counsel. *State v. Holiday*, 574 S.W.2d 429 (Mo.App. 1978). The court's ruling was not in error.

Appellant's fifth point relied on claims the trial court erred in finding appellant had been convicted previously, and was subject to sentencing by the court under the Second Offender Act. § 556.280, RSMo 1969. The prosecution produced from the court records evidence of a plea of guilty to assault with intent to rob with malice, entered by William Patterson, and a sentence of two years. Appellant argues that this evidence was insufficient to establish that the guilty plea in the prior case was entered by the appellant, William Aaron Patterson, because of the absence of the middle name "Aaron" in the record.

"Identity of names is prima facie evidence sufficient to establish the accused's identification for the purpose of showing a prior conviction under the Second Offender Act." *State v. Cook*, 463 S.W.2d 863, 868[6–8] (Mo.1971). "Generally, a middle name has little, if any, legal significance." *State v. Witt*, 371 S.W.2d 215, 220[10–11] (Mo. 1963); *State v. Cook, supra*. Here there

was identity of names except for the middle name which has been held to have little significance. Also, appellant did not deny the prior conviction.

The state met its burden of proof. "[T]he identity of the first and last names without anything to the contrary, authorized a finding by the court that appellant was the person previously convicted. [Cites omitted]." *State v. Morris,* 477 S.W.2d 40, 42 (Mo.1972). See also *State v. Warren,* 579 S.W.2d 723, 727 (Mo.App.1979). In *State v. Hands,* 260 S.W.2d 14 (Mo.1953), the court permitted the admission of records showing prior convictions of Alonzo Hands to prove the second offender status of a defendant who was charged as Alonzo Maurice Hands. Although the court disposed of the issue on the ground that further identifying information was offered, it went on to note that "[i]t was therefore unnecessary to rely solely upon the rule that the identity of the names was prima facie sufficient evidence of the identity of the persons . . . ." *State v. Hands, supra,* 18. That rule applies to this case, and the court did not err in admitting the records.

■■■■■ Appellant's final contention is that the court erred in sentencing him to a term of thirty years' imprisonment, a term which is within the statutory limits and is therefore not, as a matter of law, cruel and unusual. *State v. Kennedy,* 513 S.W.2d 697 (Mo.App.1974); *Griffith v. State,* 504 S.W.2d 324 (Mo.App.1974). Sentences of fifty years for armed robbery have been upheld by Missouri courts. *State v. Vermillion,* 486 S.W.2d 437 (Mo.1972); *State v. Gaye,* 532 S.W.2d 783 (Mo.App.1975). The apparent severity of a sentence within the statutory limits does not warrant appellate interference. *State v. Johnson,* 457 S.W.2d 795, 798 (Mo.1970).

Appellant cites *Weems v. United States,* 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910) for his proposition that the sentence is excessive. *Weems* is distinguishable because it invalidated a statute providing for cruel and unusual punishment, and not pun-

ishment itself within the statutory limit. *Vermillion, supra,* 441.

The judgment is affirmed.

KELLY, P. J., and STEWART, J., concur.