STATE OF MISSOURI, Respondent, *v*. JOHN D. BLACK,
Appellant.

**October 31, 1882.**

1. The law does not regard middle names, and hence it is immaterial that John L. Black is indicted under the name of John D. Black.
2. Written notice to a prisoner to produce a paper under his control is not necessary where his counsel has, in open court, promised to produce it.
3. Upon a failure to produce such paper, without cause, according to promise, a copy thereof may be used in evidence.

APPEAL from the St. Louis Court of Criminal Correction, CADY, J.

*Affirmed.*

PETER E. BLAND, of counsel, with F. D. TURNER, for the appellant.

BAKEWELL, J., delivered the opinion of the court.

The defendant was prosecuted by the name of John D. Black, on the charge of having made, before one Allen, a notary public, a corrupt, voluntary oath, with the intent to defame Charles P. Johnson, and in order that the same might be used in an investigation pending before the police commissioners of St. Louis.

Defendant pleaded not guilty, and that his true name was John L. Black.

The notary testified that, on November 7, 1881, the defendant Black, present in the court-room, made before him an affidavit which the notary did not read. The notary asked defendant if he was familiar with the contents of the paper, to which defendant assented, and swore to the same, and signed it in the notary's presence, who then affixed his signature and seal to the *jurat*. The notary never administered any other affidavit to defendant, and never saw him, except on that occasion and on the trial.

Johnson, a reporter of the *Republican* newspaper, swore that he was present at a meeting of the police commissioners on November 8, 1881. Bowman, an attorney, representing the chief of police, presented to the board, on that occasion, an affidavit, which the witness then got from the official reporter of the board and copied. This copy was printed in the *Republican* of the next day, and the printed copy which was read by the witness, was a copy of the original affidavit presented by Bowman. This printed matter sets forth the exact statement averred in the information, and is signed, " J. D. Black." The witness says he did not copy the notary's signature and seal, which were attached to the original.

Spink, a reporter of the *Globe-Democrat* newspaper, testified that he was present at the meeting of the board of police commissioners on November 8th ; that he saw there an affidavit signed " J. D. Black," and sworn and subscribed to before James W. Allen, with his seal attached ; that he copied it, and that the copy shown him by the attorneys for the state, was a correct copy of that affidavit, which he got from Robinson, the official reporter of the board.

Robinson swore that he was official stenographer of the board of police commissioners ; that the affidavit purporting to be signed by Black, was entrusted to him by the board, on the evening of November 8th ; that the witness took this to his office ; that he saw Spink apparently engaged in copying it ; that he kept the affidavit four days, and then gave it to Kennett, the chief of police ; that the copies of the Black affidavit in the papers were, according to the recollection of the witness, correct.

Kennett, chief of police, swore that the affidavit signed " J. D. Black " was handed to him about November 7th, by a messenger whom he did not know ; that he handed the affidavit to Bowman, his attorney ; that Bowman asked questions from the affidavit at the subsequent meetiugs of

the police commissioners ; that Bowman returned it to the witness ; and that he handed it to Frank D. Turner, when the Boland case was tried. A paper was handed to the witness, which he declared to be a correct copy of the affidavit.

Frank D. Turner is one of the counsel of defendant, and he cross-examined for defendant, on the trial.

Charles T. Noland, an attorney representing the state, swore, that when the case against defendant was called for trial on a former occasion; it was continued by consent ; that witness then stated to Turner that the state wanted the affidavit, and that Turner promised to produce it at the trial ; that, thereupon, witness stated this understanding to the court. When the case was next called, Turner was out of town. Baldwin represented the defence. The affidavit was not forthcoming according to agreement, and the case was laid over. Subsequently, Turner said he could not produce the affidavit ; and it was not produced. To this testimony, Turner, for the defence, objected, whereupon the court said : " In the absence of the affidavit, you yourself having promised to produce it in open court, it is necessary to trace it as far as we can, and know why it was not produced." The witness then said that Turner stated to him that he had no longer possession of the affidavit ; that he had handed it to Black two or three days before.

A copy of the original affidavit was then read, by direction of the court.

1. It is contended by counsel for appellant, that inasmuch as defendant is indicted as John D. Black, and the testimony is that the affidavit was signed John L. Black, there is no evidence tending to show that defendant made the affidavit, and there is positive testimony that the affidavit was made by another man.

There is nothing whatever in this objection. The testimony of the notary is clear that the affidavit was made before

him by the man Black on trial, and that that man made one, and only one, affidavit before him.   The christian or first name, is called, in law, the proper name, and a person has but one; for middle names are not regarded in law. Nor is a middle initial regarded.  *Smith* v. *Ross*, 7 Mo. 463; *Hardy* v. *The State*, 7 Mo. 607; 10 Mo. 391; *Snook's Case*, 2 Hilt. 566.   The change in the middle name is no variance, nor does it appear how it can be at all material, since the identity of the person who signed this affidavit is established.   He may have signed the affidavit "John L. Black," or he may have signed it "John D. Black," or he may have inserted a letter between "John" and "Black" which would pass for an L. or a D., and which the copyists erroneously took for a D., when it was meant for an L.   It is enough that it appears that he signed the affidavit in question; the other facts to establish the offence charged being sufficiently proved.   The Black on trial is identified by the notary as having signed an affidavit before him on the 7th of November, by the name of John L. Black; and the notary swears that the same man signed only one affidavit before him; and there is evidence from which it may be fairly inferred that the copy read in evidence was a true copy of that affidavit; and it is admitted that that copy disclosed the contents of the original to have been as averred in the information.   It is true, as appellant contends, that identity of name is *prima facie* evidence of identity of persons; but the insertion or absence of the middle name does not affect the question of identity in one way or the other (*Phillips* v. *Evans*, 64 Mo. 23), and the person who made the affidavit in question in this case, is identified as the defendant on trial, by the uncontradicted testimony of the notary.

2. It is contended that it was error to permit the copy of the affidavit to go to the jury, because no attempt was made to trace the original beyond the hands of defendant or his

attorney, and because it did not appear that notice to produce it had been given, and because no demand was then and there made upon defendant or his attorney to produce the original at the trial.

If the rule in regard to secondary evidence of a forged paper in a trial for forgery is to be applied, that rule is, that no such evidence can be received of the contents of such paper in the prisoner's possession, until due and reasonable notice to produce it has been given to the prisoner, unless it clearly appears that he has destroyed it. But, in this case, it appears that counsel for the prisoner had promised in open court to produce the affidavit at the trial. Under the circumstances, the paper having been traced to the possession of the prisoner, to whom his counsel says that he delivered it, we do not think that the rule as to written notice ought to be insisted upon. It is manifest that the prisoner could not have been prejudiced by the want of written notice to produce. Notice to produce may be directed to the party or his attorney, and should be served before the trial begins. The object of the notice is, not only to procure the paper, but to give the party notified opportunity to provide proper testimony to support or impeach it. In the present case, the call upon the attorney was made long before the trial, in open court, and reliance seems to have been placed upon his promise that the paper should be forthcoming at the trial. It would be absurd to hold, under these circumstances, that secondary evidence ought to be excluded, merely because a written notice which had been plainly waived was not given.

No other grounds than those which we have considered are suggested by counsel for appellant for a reversal of the judgment. We have examined the record. The evidence seems to warrant the conviction, and we perceive no error which warrants a reversal. The state has not been represented by counsel in this court.

The judgment is affirmed. All the judges concur.