STATE v. LLOYD WALTER SPENCER, Appellant.—No. 39779.—195 S. W. (2d) 99.

Division Two, June 10, 1946.

*J. K. Owens* for appellant.

*J. E. Taylor, Attorney General,* and *Will F. Berry, Jr.,* Assistant Attorney General, for respondent.

68

 ELLISON, P. J.—The appellant was convicted in the circuit court of Jackson county of murder in the first degree for shooting and killing with a pistol one William L. Dore at the "Beer Tavern" located at 6402 East Fifteenth Street in Kansas City. The jury assessed his punishment at life imprisonment in the state penitentiary. He was prosecuted by an information which charged him as an habitual criminal under Sec. 4854,[1] on account of three prior convictions of felony and service of punishment. These were admitted by the appellant at the beginning of the trial and the jury found one of them. The homicide also was admitted, appellant's main defense being self-defense. He was represented in the trial by able counsel appointed by the court. But no brief in his behalf has been filed here. So we must look to his motion for new trial in the circuit court for his charges of error. It contains 16 assignments but many of them can be combined in our discussion.

The appellant and the deceased had been gambling on a pinball machine at the Beer Tavern and quarrelled violently, the appellant drawing a knife, but hostilities were checked. The State's evidence showed that presently thereafter the appellant left and returned in about fifteen minutes holding a pistol concealed in his right hand coat pocket. About that time the deceased walked out the front door of the tavern onto the sidewalk, when from a distance of about ten feet the appellant shot him. Appellant then advanced and after the deceased had fallen shot him twice more from a lesser distance, the third shot being from only a foot away. In his own behalf, appellant testified the deceased approached him in a threatening way and reached in his pocket, whereupon he (appellant) fired his pistol in the air once, and as the deceased continued forward, he fired the fatal shots.

 As to the record proper, the information and verdict were in proper form, respectively, under the three decisions cited in the

---

[1] References are to our statutes, R. S. Mo. 1939, and Mo. R. S. A., same section number, unless otherwise indicated.

margin,[2] and appellant was granted allocution under Sec. 4102. On matters of exception, the first four assignments of error in the motion for new trial, complain for four several reasons because the trial court refused to discharge the jury panel on appellant's motion.

The first of these was that the members of the panel were allowed to separate "during the noon recess" and to converse with the uncle of the deceased; and the fourth was that they were allowed to separate during the night of the first day, the selection of the jury not having been completed that day. The incident referred to as occurring during the noon recess was on the first day of the trial, after a part of the jury panel were sworn to answer questions concerning their qualifications, but before the jury had been selected, impaneled and sworn to try the cause. The matter was promptly brought to the attention of the court when court convened, and evidence was heard. The uncle admitted he talked to one man in the hall and told him the deceased was his nephew and a mighty nice fellow, but he said he didn't know the man was on the jury panel. The venireman, a Mr. Wolf [who was not chosen for the jury] said the uncle told him he was kin to the deceased but nothing else, and Wolf walked away.

There is no merit in the assignment as to either incident. No contention is made that anything untoward occurred at the night recess. Under the statutes[3] and such decisions as State v. McGee, 336 Mo. 1082, 1090(1), 83 S. W. (2d) 98, 103(1), the trial court has a discretion to permit the jury to separate, before they are impaneled and sworn, and error cannot be maintained in the absence of a showing of prejudice resulting from the separation. Neither party had requested that the veniremen be kept together, and the facts shown in evidence disclose that appellant was not prejudiced.

The next complaint under this head is that members of the panel "were permitted to read newspapers which they stated they had read and which stated that (appellant) ▇▇▇ was not only guilty of certain offenses of which he had been convicted, but stated that when he was last discharged from the penitentiary he had been arrested nineteen times, which was prejudicial. . . . " The alleged prejudicial article appeared in the noon edition of the Kansas City Star on the day the jury was impaneled. It said: "Lloyd W. Spencer, 45 years old, 6210 East Sixteenth Street, is to be tried in connection with the fatal shooting last May 18 of William Dore, 39, of 219 West Ninth Street, at the Beer Barrel tavern, 6402 East Fifteenth Street. The shooting followed an argument over a $2 bet on a pin-

---

[2]State v. Kenyon, 343 Mo. 1168, 1179, 126 S. W. (2d) 245, 251; State v. Sumpter, 335 Mo. 620, 622, 73 S. W. (2d) 760; State v. Tyler, 349 Mo. 167, 172, 159 S. W. (2d) 777, 781.
[3]Sec's 4067, 4068, 4071 and 4124(2), R. S. 1939 and Mo. R. S. A.

ball game. Police records show Spencer, an ex-convict, has nineteen previous arrests here.''

It will be observed that the news story did not charge the appellant was guilty of any offense, but did say he was an ex-convict and had been arrested 19 times in Kansas City. The veniremen were searchingly questioned separately about the effect of the article on their minds, in their voir dire examination by appellant's counsel. Eight of them said they had read it. All declared it made no impression and would have no effect on them in the decision of the case if they were chosen as jurors. Only one of them served on the jury. Sec. 4060 declares that even if a juror in a criminal case have an opinion on the issue or any material fact to be tried, yet if such opinion be founded only on rumor and newspaper reports and is not such as to prejudice or bias his mind, he may nevertheless be sworn. Under the facts here there was no prejudice or reversible error.

■ The next assignment charges error in the trial court's failure to discharge the jury panel (not the jury) at the time of the voir dire examination for prejudicial remarks by the prosecuting attorney concerning his interest in the cause. As already indicated, much time was consumed in completing the jury panel—until noon of the second day. Nearly half of the 370 page bill of exceptions covers that part of the proceedings. And yet the motion for new trial wholly fails to specify the incident referred to. This alone would be enough to invalidate the assignment under Sec. 4125, which requires the assignments in the motion to be "set forth in detail and with particularity."

■ But we have searched the transcript as far as we reasonably can, and find only one incident that might have been referred to by this assignment. With particular reference to the "fairness" of a prosecution under the Habitual Criminal Act, appellant's counsel told the veniremen during their examination that there were "three people" who were anxious for the defendant to be "tried fairly"; the court, the defendant's attorney and the jury. Later the assistant prosecuting attorney answered that he thought appellant's counsel "purposely" had said that to them (the veniremen), and then asserted it was the duty of the prosecuting attorney to see that "this man" got a fair trial just the same as it was the duty of the court and jury. The counsel engaged in personal argument, which the court stopped, and overruled the objection of appellant's counsel. The ruling was proper. Counsel had no right to impugn the fairness of the prosecution because it was under the habitual criminal statutes, which have been a part of our law for over 100 years. The fairness of the statute is a question for the General Assembly.

■ The next assignment predicates error on the trial court's failure to discharge the jury when the witness Mrs. Hartnett, proprie-

tor of the Beer Tavern, volunteered the statement that appllant had had other trouble in her saloon. The statement was made in this connection. The witness was under cross-examination by appellant's counsel concerning her testimony on direct examination that from the inside of the tavern she had seen the appellant outside on the sidewalk with his hand in his right hand pocket and it was "bulging out." [And later she saw him fire the shots with his revolver.]

Appellant's counsel asked her: "You didn't even know there was a gun out there at that time?" and she answered that she did. Then she was asked, "How did you know it at that time?" She answered, "I could see it." Then counsel pressed her further: "Now, let's see— let's be certain—you could not see it where he had it in his pocket? Can you tell the jury how you can see it when it was in his pocket?" To this she replied: "I know there was a bulge there, and if I can,—it was Mr. Spencer (the appellant) caused us trouble once before, and that is why I suspicioned . . . " Under this questioning the witness had a right to tell what made her think the bulge in appellant's pocket was made by a pistol he was holding. Besides appellant's counsel did not object, or move that the testimony be stricken out, and the jury instructed to disregard it. The assignment is overruled. State v. Howard, 352 Mo. 410, 412(1), 177 S. W. (2d) 616, 617(1).

 The next two assignments in the motion for new trial charge error in admitting the testimony of "witness ——," the name of the witness being omitted. Obviously these assignments stated nothing and were wholly insufficient under the new trial statute, Sec. 4125. However, the second of the two assignments discloses witness —— had made the voluntary statement when "he" testified, that the appellant had had trouble prior to the commission of the alleged homicide here involved. The learned assistant attorney general surmises the assignment refers to witness James W. Taylor, bartender at the Beer Tavern. On cross-examination the witness had testified that he asked the deceased not to go out on the sidewalk where the appellant was, and appellant's counsel asked, "Now, why did you expect trouble?" The witness answered, "I will tell you why, because (the appellant) had caused trouble there before." Here again the answer was invited, and no objection or motion to strike was made. There was no error.

 Appellant's next assignment contends the trial court erred in the refusal of his peremptory instruction A in the nature of a demurrer "at the close of the evidence." As a matter of fact, that instruction was offered at the close of the State's case. But it makes no difference. The State's evidence made a prima facie case, and appellant followed it up by his own testimony which admitted the

homicide and relied on self-defense. The State's evidence negatived that defense and, if true, showed appellant was the aggressor in a brutal murder.

It is next charged that the State's main instructions, on first degree murder, should not have been given because there was no substantial evidence tending to show the homicide was committed deliberately. This contention is untenable. All the evidence showed that shortly before the homicide there had been a rather violent quarrel in the Beer Tavern between appellant, deceased and another, during which the appellant drew a knife but did not use it. He left and came back about fifteen minutes later with a revolver in his pocket, with which he shot the deceased in two vital parts as the latter walked out of the Beer Tavern. The first shot was fired from a distance of ten feet, and appellant then advanced and fired two more shots at close range. The State's evidence further showed the deceased just previously had announced he was going home, and walked out of the Beer Tavern without hostile demonstration and apparently unarmed. This was enough to make a case for the jury on deliberation,[4] notwithstanding: appellant's testimony on self-defense; the fact that deceased had been warned there might be trouble, and requested not to go outside the tavern; and the fact that the State's medical evidence disclosed there were only two bullet wounds on the corpse, thus possibly corroborating appellant's testimony that he fired in the air the first of the three shots from his revolver.

With reference to appellant's assignments complaining of the State's instructions under the habitual criminal act. The case was submitted to the jury on the three charges of first degree murder, second degree murder and manslaughter, by three separate main instructions. Then follow three instructions respectively declaring the punishments to be assessed under the habitual criminal statute in the event of a finding of guilt on said three ▮ several crimes submitted in the three main instructions. In the one of these covering murder in the first degree the punishment was fixed at death or life imprisonment. Following these three instructions were three on the forms of verdict, which respectively covered the same ground, except that they left a blank line for the punishment to be inserted. So it will be seen these six State's instructions gave prominence to the habitual criminal aspects of the case.

As we understand appellant's first assignment of error (No. 9) assailing these habitual criminal instructions, it maintains they could only have been injected into the case for the purpose of inflaming and prejudicing the jury and insuring an aggravated punishment—this because a finding of guilt in a prosecution for first degree mur-

[4]State v. Holland, 354 Mo. 527, 189 S. W. (2d) 989, 997(9); State v. Page (Mo. Div. 2), 130 S. W. (2d) 520, 523(3).

der under the general section, 4378, carries the extreme punishments not only of life imprisonment but even of death, without the parading of any prior convictions and regardless of whether the defendant be a first offender or a repeater. And this latter is true, whereas, strange as it may seem, the habitual criminal statute, Sec. 4854, authorizes no punishment for habitual criminals higher than life imprisonment.

We cannot agree with appellant's counsel (below). The assignment amounts to a contention that there never can be a prosecution under the habitual criminal statute for a crime the punishment for which may be death or life imprisonment—and especially in a first degree murder case where the punishment can be nothing less than these—because in such instances there is no punishment to be aggravated by reason of prior convictions, since the general statute has already put it as high as it can go under the punitive statute. But this reasoning is unsound. Nearly all our criminal statutes provide for a *range* of punishment, and the habitual criminal statute simply calls for the enforcement of the maximum, thereby adding the punitive feature. This is true of second degree murder. First degree murder (Sec. 4378) and the fourth commission of a felony while armed (Sec. 4821) stand alone among our statutory crimes in imposing a minimum punishment of life imprisonment, not excepting treason (Sec. 3873) and rape (Sec. 3999).

But the fact that the punishment for first degree murder is exceptional does not mean it cannot be prosecuted by an information or indictment drawn under the habitual criminal act, and instructions given accordingly. When this is done, if the prosecutor later concludes not to submit the cause to the jury on the act, of course instructions thereunder would not be given, and the jury would take the case under the general statute, Sec. 4378, calling for a maximum punishment of death and a minimum of life imprisonment. The same would also be necessarily true if the cause were submitted to the jury under the act, and the jury found the accused guilty of the crime, but in his favor as to the prior conviction. For these reasons it was further held in State v. Krebs, 336 Mo. 576, 580(2), 80 S. W. (2d) 196, 198(2) that the death penalty can be imposed in a prosecution for a capital offense even when the accused is both prosecuted and convicted under the habitual criminal act—this on the theory that both the general statute and the habitual criminal statute underly the prosecution, the purpose of the latter being merely to aggravate the punishment, not to diminish it.

For that reason, unquestionably, the State's instruction No. 6 in this case specifying the punishment to be assessed in the event of a conviction of first degree murder under the habitual criminal act, required it to be life imprisonment or death. But if there be any doubt as to the validity of that instruction or the correctness of the

conclusion in the Krebs case, it can be affirmed with certainty that the error was harmless, for the jury convicted the appellant only of life imprisonment, which was authorized by the act. And in any event it is not a sound argument to say that when the cause is submitted under the habitual criminal act it is improper to instruct thereon merely because the same or greater punishment could have been inflicted under the general statute, Sec. 4378.

However the anomalies encountered in these habitual criminal statutes call for legislative attention. Others recently before this court are considered in State v. Brinkley, 193 S. W. (2d) 49, 57 (14-18), 354 Mo. 1051, and id., 354 Mo. 337, 189 S. W. (2d) 314, 334 (47-50). These statutes have been revised in nearly all the states during the recent years. Ours have gone without change for the 111 years since R. S. Mo. 1835, p. 212, sec. 7, except for a minor change in a single respect by Laws Mo. 1895, p. 153.

 The other assignment in the foregoing connection is that the trial court erred "in giving the habitual criminal instruction in *all* of the instructions given by it," and especially those on first and second degree murder. We take this to mean the repetition of the charge was erroneous. We cannot agree. Since the State had a right to submit alternatively the issue of appellant's guilt of the three several crimes of first and second degree murder and manslaughter, then it was proper to submit the habitual criminal issue in conjunction with each. There is no charge of actual bad faith on the part of the prosecutor in injecting the habitual criminal issue into the case, other than that it was inherently prejudicial. But the proof had its proper place and function on that issue under Sec. 4854, just as it would have had to impeach the witness under Sec's 4081 and 1916. And appellant formally admitted the three prior convictions.

 The next assignment is that "the Court erred in giving instruction number 'Four', the same being instruction of self-defense for the reason that it did not properly state the law as to self-defense in this state." This assignment was too vague to comply with the new trial statute, Sec. 4125. State v. Tharp, 334 Mo. 46, 52(4), 64 S. W. (2d) 249, 253(4). Also, instruction No. 4 was not on self-defense. But instruction No. 5 was, and we find no error in it.

 Complaint is made that the instructions on the forms of verdict misled the jury and made them think they must convict appellant under the habitual criminal act or not at all. And that was true of the three instructions which required the jury to find appellant guilty of the main offense *and also* that he had previously been convicted of the prior felony and complied with the sentence. But there were three instructions respectively and exclusively on the three crimes of first degree murder, second degree murder and manslaughter. These three instructions made no mention whatever of

any prior conviction and concluded with the words "and unless you find the facts to be as above stated, you will acquit the defendant of" [the particular crime dealt with]. And there were also three instructions giving forms of verdict in the event of a finding of guilty under the three instructions just mentioned; that these verdict forms likewise wholly omitted any reference to any prior conviction. And there was one form of verdict to be used in case of an acquittal. There is no merit in this assignment.

Another assignment charges that the verdict was the result of "passionate prejudice" on the part of the jury caused by the improper argument of the prosecuting attorney. But the motion for new trial does not specify what the argument was and there is nothing for review. State v. Janes, 318 Mo. 525, 530 (II), 1 S. W. (2d) 137, 139 (4). However we have examined the transcript and can find nothing that would justify the foregoing criticism. One of the assistant prosecuting attorneys did say twice "it was a cold blooded murder," but he was arguing from the evidence as he had a right to do. The assignment cannot be sustained.

The last three assignments in the motion charge that the verdict was against the law; and the evidence; and that the court failed to instruct the jury on all the law of the case although requested by the defendant so to do. These assignments obviously, and under repeated decisions, are too general to comply with the new trial statute, Sec. 4125. Furthermore we have examined the transcript and find the only objection made by appellant's counsel on this last ground was: "I object to the court in failing to fully instruct the jury in this case as to the law in this case." The point might have been raised *specifically* for the first time in the motion for new trial. State v. Graves, 352 Mo. 1102, 1119 (16), 182 S. W. (2d) 46, 57 (26), but it was not done there. As a matter of fact we see no serious omissions in the instructions, and ▮▮▮ take it that counsel's objections were formal.

Finding no reversible error the judgment and sentence are therefore affirmed. All concur.