**STATE of Missouri, Respondent,**

v.

**Charles W. JOHNSTONE, Appellant.**

**No. 47366.**

Supreme Court of Missouri,

Division No. 2.

March 14, 1960.

Motion to Transfer to Court en Banc
Denied May 9, 1960.

Charles N. Johnstone, pro se.

John M. Dalton, Atty. Gen., Richard W. Dahms, Special Asst. Atty. Gen., for respondent.

BOHLING, Commissioner.

Charles Johnstone appeals from a judgment imposing a sentence of life imprisonment, in accord with the verdict of the jury, upon conviction under the Habitual Criminal Act of robbery in the first degree by means of a dangerous and deadly weapon. The main issues presented in defendant's motion for new trial embrace attacks against the information, the admissibility and sufficiency of the evidence, separation of the jury, the presence of guards, and the conduct of his court-appointed counsel.

Miss Martha Beauchamp worked in a cashier's cage on the fifth floor of Peck's Department Store, Kansas City, Jackson County, Missouri. About 12:30 or 12:45 p.m., August 15, 1958, a man, later established to be defendant, Charles Johnstone, came up to the counter between her and the adjoining cashier's cage window. She asked him if she could help him. He had a brown zipper brief case and a short blue barrel automatic gun. He "pulled a gun on" Miss Beauchamp and said: "Yes, you can. Give me all the tens and twenties that you have." He had the gun "down like," concealed from people nearby by his brief case and a machine on the counter. He said: "I mean business." He had his brief case open and told her to put the money in the brief case. She took all the tens and twenties out of her cashier's drawer and laid the money at the edge of the brief case. The store has a warning device, and Miss Beauchamp signaled for help as she opened the drawer. Joe Quick, in the office about 20 to 25 feet from the cashier's cage, heard the signal. Defendant told Miss Beauchamp that was not enough and for her to give him the tens and twenties out of the other girl's cashier's drawer. Miss Beauchamp did this. Defendant again said that wasn't enough, and she gave him some ones. She gave him the money because "he pulled a gun on me." Defendant then ordered Miss Beauchamp to turn around and walk back into a little room at the rear of the cashier's cage. Defendant was closing his brief case at the counter as she turned around to comply with his directions.

Joe Quick walked toward the cashier's cage and, when about 10 feet away, saw defendant holding a gun on Miss Beauchamp and committing the robbery. He told one of the girls on the floor to call the police and walked out on the selling floor. The robbery took three or four minutes.

Defendant went to the elevator. Mr. Quick followed. When the elevator arrived, they both got on, rode to the first floor, and got off. Defendant walked out of the store, turned south on Main toward 12th Street, with Mr. Quick following about 30 to 35 feet back. Defendant stopped at the Paramount Theater, purchased a ticket and went into the theater. Mr. Quick told the ticket seller he had just witnessed an armed robbery, had followed the man to the theater, and to call the police. The ticket seller hesitated. Mr. Quick saw two motorcycle officers at 12th and Main. He ran to them, told them what had happened, and the three went to the theater. Mr. Quick went into the theater while the officers waited in the lobby. He did not find defendant. Officers Elliott W. Harris and Ralph B. Stewart preceded Mr. Quick downstairs to the men's rest room. As Officer Harris entered the rest room, a man standing across the room near a telephone booth pulled a gun out of his shirt and fired in the direction of the officers. Officer Stewart, right behind Officer Harris, shot defendant, causing defendant to fall and his gun to fall to the floor about six feet from him.

Mr. Quick testified defendant carried a brown zipper brief case and was wearing a light straw hat, a brown sport coat, and gray trousers. The officers took possession of defendant's hat, brief case and gun. Detective Delbert Cull recovered $2,035 from the left hand pocket of defendant's brown coat.

Defendant had been shot in the upper right thigh, and was taken by ambulance to a hospital within a few minutes.

Defendant, in a conversation with Detective Cull, stated he lived in Nebraska, had been working in Louisiana, came to Kansas City "to pull a holdup," and that he had committed the robbery at Peck's.

At the trial defendant was identified by Miss Beauchamp, Mr. Quick, and Officers Harris, Stewart and Cull.

Defendant prepared and filed a motion for new trial. On motion of his counsel, the trial court considered defendant's motion incorporated within his counsel's motion for new trial.

Defendant contends his motion for a directed verdict of acquittal should have been sustained because there was a material variance between the charge and the proof in that there was no proof sustaining the allegation that the robbery was committed "by force and violence" to the person of Martha L. Beauchamp.

Robbery in the first degree may be perpetrated in different ways; for instance, by violence to the person or by putting the person robbed in fear of some immediate injury to his person (§ 560.120), and its commission by means of a dangerous and deadly weapon authorizes a more severe punishment (§ 560.135). (Statutory references are to RSMo 1949 and V.A.M.S.)

The information charged defendant with two prior felony convictions, imprisonments and discharges upon pardon or compliance with the sentence imposed (§§ 556.280, 556.290); and, following the language of the statute, charged that thereafter, on August 15, 1958, defendant robbed Martha L. Beauchamp by force and violence to the person and by putting her in fear of an immediate injury to her person.

■ Where a statute denounces but one offense which may be perpetrated by different nonrepugnant acts, as robbery, the commission of the offense by the different acts may be charged in a single count, the conjunctive "and" being substituted in the charge for the disjunctive "or" in the statute; and proof of the consummation of the offense by any of the acts by which it may be committed will sustain the charge. State v. Craft, 299 Mo. 332, 253 S.W. 224, 227 [5]; State v. Eddy, Mo., 199 S.W. 186 [1–3]; State v. Hartman, 364 Mo. 1109, 273 S.W.2d 198, 203[3]; State v. Williams, Mo., 183 S.W. 308[1, 2]; 42 C.J.S. Indictments and Informations § 251. In such circumstances no fatal variance arises from a failure to prove all of the several ways in which the offense is charged. Cases supra. In holding an information charging robbery by two separate methods in the conjunctive not defective or duplicitous, State v. Craft, Mo., 23 S.W.2d 183, 185[1], has dictum that such pleading puts "the burden on the state to prove both methods as alleged." This dictum is not supported by the case there stressed (see State v. Flynn, 258 Mo. 211, 223, 167 S.W. 516, 519, where the robbery was committed by violence and by putting in fear) or the cases cited, and should not be followed. Alleging the ownership of the property taken in a clerk, servant or other bailee in lawful possession under the owner has been held sufficient a against a robber. State v. Montgomery, 181 Mo. 19, 79 S.W. 693, 694 et seq., 67 L.R.A. 343; State v. Carroll, 214 Mo. 392, 113 S.W. 1051, 1053(2), 21 L.R.A.,N.S., 311; McCarthy v. Eidson, Banc, Mo., 262 S.W.2d 52, 53, 54.

■ The information alleged that defendant's "Christian name in full is unknown to" the prosecuting attorney. The caption of the information named defendant as Charles W. Johnstone (see Kirk v. State, 6 Mo. 469) and in the body of the information his name also appeared as Charles Johnstone. There is no merit in defendant's complaint based upon his correct name being Charles Newcomb Johnstone. An error in the middle name or initial may be disregarded. State v. Martin, 10 Mo. *391; State v. Black, 12 Mo. App. 531, 534; State v. Hands, Mo., 260 S.W.2d 14[2].

■ Defendant makes two complaints of the habitual criminal charge in the

information. Summarized, they are to the effect this charge placed him in double jeopardy and deprived him of a fair and impartial trial, which, he states, is not possible when "a sentence is mandatory merely upon proof of prior conviction." There is no merit in either complaint. The Habitual Criminal Act does not make a sentence mandatory merely upon proof of a prior conviction. Many cases hold a charge under the act does not place the accused in double jeopardy. See State v. O'Brien, Mo., 252 S.W.2d 357, 360; State v. Hagerman, 361 Mo. 994, 238 S.W.2d 327, 330 [9]. The fairness of the act is a question of legislative policy beyond this court's jurisdiction. State v. Humphries, 350 Mo. 938, 169 S.W.2d 350, 352[2].

The verdict found defendant guilty of robbery, first degree, as charged; that defendant has been convicted of two prior felonies, and assessed his punishment at imprisonment in the state penitentiary for the remainder of his natural life. This is sufficient under the first degree robbery (§§ 560.120, 560.135) and the habitual criminal (§ 556.280) statutes on the record before us. State v. Jonas, Mo., 260 S.W.2d 3, 6 [7]; State v. Kelly, Mo., 258 S.W.2d 611 [7]; State v. Ash, Mo., 286 S.W.2d 808 [8], and cases cited.

■ The punishment of life imprisonment was mandatory under the statutes if the jury believed the evidence on behalf of the State; and the new trial assignment that the verdict was the result of passion and prejudice as evidenced by the sentence of life imprisonment is without merit. State v. Copeland, 335 Mo. 140, 71 S.W.2d 746[10, 11]; State v. Ortell, Mo., 50 S.W.2d 1037; State v. Macon, Mo., 287 S.W. 775.

Defendant, in separate assignments, contends prejudicial error occurred in allowing the State to exhibit in the presence of the jury a brief case and a gun allegedly used by the defendant in committing the robbery. There is no showing of record that a brief case was exhibited in the pres-

ence of the jury, or that any like complaint was presented to the court for a ruling. State v. Williams, 335 Mo. 234, 71 S.W.2d 732, 735[9, 10]; State v. McKeever, 339 Mo. 1066, 101 S.W.2d 22, 30 [19, 20].

■ Defendant used a gun in committing the robbery and to prevent arrest. State's Exhibit 4, identified by several witnesses and admitted in evidence, was a photograph of defendant's gun on the rest room floor. It was described by Officer Stewart as a ".32 automatic, 765." The State sought to identify defendant's gun for admission in evidence by Officer Cull but the court considered the officer's identification insufficient, and it developed that the name of the officer who had taken charge of the gun was not endorsed as a witness. It appears that the gun was then placed on the counsel table. Defendant, outside the presence of the jury, objected, stating leaving the gun on the counsel table, it having been denied admission in evidence, was prejudicial and moved to discharge the jury. The court denied the request to discharge the jury. From defendant's examination of witnesses, defendant's hat, brief case, brown coat and gun were not being displayed before the jury, as defendant's counsel inquired of witnesses if they knew why said articles "are not over here today"; and it is reasonable to infer that the gun was removed from the counsel table upon defendant's objection. The trial court considered the incident did not warrant a new trial. We approve that ruling. Consult State v. Whitaker, Mo., 312 S.W.2d 34, 39[11–13].

■ Defendant claims the court erred "in allowing two armed deputies to bring defendant into the court room and remain seated inside the counsel area and allowing one armed deputy to sit inside the counsel area and behind defendant within five feet of the jury box with a pistol on his side, clearly within the view of the jury, during the first day of the trial." The first day of the trial was devoted to

selecting the twelve jurors. The court had been informed defendant had made statements to the sheriff that he might cause a disturbance during the trial. The record discloses that the two deputies were a considerable distance from the counsel table and appeared to be a part of the courtroom officials; that they were not in uniform and there was nothing irregular about their appearance. When counsel again directed the court's attention to the presence of the deputies the court stated that he had not seen a weapon on either of them; that one of the deputies was seated where the jurors in the box could not see him; that to admonish the deputies at that time would call the situation to the attention of the panel, but he would do so if counsel requested it; and that when they finished with the talesmen in the jury box there would be a short recess and he would talk to the deputies. Counsel responded: "Very good, judge." Later, during a recess, the court informed counsel he had admonished the deputies to wear coats, to conceal their weapons, and be as inconspicuous as possible; that the sheriff was taking precautions because defendant had made statements he might create a disturbance; that one deputy assured him he had never had his weapon in view and the other, who had a weapon in a holster, had been seated underneath a coat rack where the jury could not observe him; that the defendant was not shackled or manacled in any way and was dressed in civilian clothes. This is not a case where the accused was handcuffed when brought into the presence of the jury. State v. Rice, 347 Mo. 812, 149 S.W.2d 347; State v. Boyd, Mo., 256 S.W.2d 765. There was no showing of misconduct on the part of the deputies. The case falls within the holdings that courts may take the reasonably necessary precautions for the maintenance of order and retention of the custody of an accused during the progress of the trial. State v. McKeever, 339 Mo. 1066, 101 S.W.2d 22, 30[22–24] and cases cited.

The assignment that the instructions given by the court "were confusing, misleading, contradictory and did not properly state the law" is too general to preserve any issue for appellate review. Sup. Ct.R. 27.20, V.A.M.R., § 547.030; State v. Sinovich, 329 Mo. 909, 46 S.W.2d 877[9]; State v. Reese, 364 Mo. 1221, 274 S.W.2d 304[8].

The trial jury was selected late in the day of November 12, 1958. The court gave them the customary admonishment and permitted them to go to their homes for the night. The following morning they were sworn to try the case. The State announced it was not asking the death penalty. The case was so tried. Defendant asserts in his motion that while the jury was so excused the case "could have been discussed" by or within the hearing of members of the the trial jury. There is no showing whatsoever that any such discussion occurred. See §§ 546.220, 546.230. State v. Todd, 146 Mo. 295, 47 S.W. 923, 924 (3), ruled a similar situation against defendant's position. State v. McGee, 336 Mo. 1082, 83 S.W.2d 98[1]; State v. Spencer, 355 Mo. 65, 195 S.W.2d 99[2].

Defendant states his plea for a continuance was denied, depriving him of sufficient time to obtain funds to hire an unbiased counsel and to prepare a defense. In another portion of his motion defendant states he is a pauper and unable to hire counsel. To avoid some repetition later we insert the facts connected with defendant's contention (hereinafter ruled) that he was not allowed to dismiss his court-appointed counsel. Defendant committed the robbery and was apprehended August 15, 1958. (All dates refer to 1958.) An information was filed September 8th. Defendant appeared for arraignment on September 18th. He refused the court's offer to appoint counsel. He was then arraigned and entered a plea of not guilty. The case was set for trial on October 20th, and then at defendant's request, the court appointed counsel for defendant, naming James Mc-

Mullin. When the case was called in October, Mr. McMullin, defendant being present, made oral request for a continuance which was overruled. On October 22nd, before the jury was sworn, defendant informed the court he did not want Mr. McMullin to represent him although he considered Mr. McMullin a fine man and a very good attorney, and wanted a continuance to get another attorney. The court asked defendant why he did not want Mr. McMullin and defendant stated "all I want is time to prepare my case properly." The court relieved Mr. McMullin of his appointment, continued the case for the term and set it for trial November 10th.

■ Defendant also claims he was given "quick justice," asserting "the case was still being publicised in newspapers and nationally distributed magazines" and members of the jury "could have been influenced by said publicity." The voir dire examination of the jury panel started on November 12th. From statements in the record it appears that on November 11, 1958, there was a front page story and picture of a man who had been shot and killed about a half block from where defendant had been apprehended in the leading newspaper of Kansas City, and the robbery of which defendant was charged was mentioned in the story. A further continuance was asked. This was denied. The prospective jurors were questioned as to whether they had read this article and, if they had, as to whether the article would have any influence upon the discharge of their duties as jurors. The record discloses no abuse of the discretion resting in trial courts in ruling a defendant's requests for a continuance. State v. Le Beau, Mo., 306 S.W.2d 482, 486; State v. Bockman, Mo., 251 S.W.2d 607, 608[3]. The circumstances with respect to the newspaper article fall within the observations in State v. Golden, 353 Mo. 585, 183 S.W.2d 109 [1–3], 112, where we held there was no abuse of discretion in refusing a continuance. See also Finnegan v. United States, 8 Cir., 204 F.2d 105, 110.

■ Defendant asserts he was not allowed to dismiss his court-appointed counsel. We have stated facts connected with this contention in the second preceding paragraph. The next entry of record following the continuance of the case to November shows the defendant present on November 12th and being represented by Mr. McMullin. Mr. McMullin represented defendant throughout the trial before the jury without any objection interposed by defendant. Defendant had from August 15, 1958, the date of the robbery and his apprehension, to November 10, 1958, to make arrangements for his trial. Cases are tried on review on the record made in the trial court and certified here. We find nothing of record on which to predicate wrong action on the part of the court in Mr. McMullin's acting as counsel for defendant.

■ Defendant next asserts "that vital evidence of the defense was deliberately withheld by the defense counsel," and that defendant "was not allowed to testify in his own behalf by defense counsel." He also "claims that he did not have the benefit of legal counsel" and follows this by statements of some of the duties a lawyer owes his client. These assignments are conclusions. They demonstrate the wisdom of Sup.Ct.R. 27.20. The allegations of a motion for new trial are not self proving. None of the above matters was presented to the trial court for ruling. When the motion for new trial was called for argument, Mr. McMullin, at defendant's request, again sought to withdraw from the case. (Mr. McMullin thereafter, with the court's permission, secured authorization for defendant to appeal as a poor person and perfected defendant's appeal.) After hearing defendant argue his motion at length, the court stated Mr. McMullin had conducted defendant's trial with ability, and he knew of no misconduct by and had no complaint to make of Mr. McMullin. Our examination of the record fully sustains this view of the trial court. Defendant, not his

court-appointed counsel, made the facts that resulted in his conviction. A defendant in a criminal case is entitled to counsel. Mo.Const. Art. I, § 18, V.A. M.S. Sup.Ct.R. 29.01. This record does not establish misconduct on the part of defendant's court-appointed counsel. Conley v. Cox, 8 Cir., 138 F.2d 786[2]; State v. Greaves, 243 Mo. 540, 147 S.W. 973, 975[7]; State v. Warren, Mo., 321 S.W.2d 705, 709[5].

The record certified here discloses that defendant had a fair trial.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.

On Motion to Transfer to Court En Banc

PER CURIAM.

Appellant has filed motions seeking a "hearing En Banc on Constitutional Questions Raised on Appeal," upon which he asserts no finding was made, and a "Reappraisal of Entire Case." The motions are without merit.

■ Constitutional questions to be preserved for appellate review must be raised at the first opportunity consistent with orderly procedure, and must be kept alive throughout the case and properly preserved for review in a motion for new trial. City of St. Louis v. Butler Co., 358 Mo. 1221, 219 S.W.2d 372 [6, 7]; State v. Smith, Mo., 310 S.W.2d 845, 850 [6, 7]; State v. Powers, 350 Mo. 942, 169 S.W.2d 377 [3–7]. Appellant did not do this. Allegations of error first sufficiently appearing in an appellant's brief preserve nothing for appellate review. State v. Davis, Mo.,

251 S.W.2d 610, 616 [5, 6]; State v. Knight, 356 Mo. 1233, 206 S.W.2d 330, 332 [6]; State v. Powers, supra. On original submission we considered, ex gratia, constitutional issues as well as alleged trial errors insufficiently presented in the trial court but mentioned in appellant's motions for new trial.

■ It has been held time and again that the habitual criminal act under review does not violate provisions of the State or United States Constitutions. Moore v. State of Missouri, 159 U.S. 673, 16 S.Ct. 179, 40 L.Ed. 301, affirming State v. Moore, 121 Mo. 514, 26 S.W. 345; State v. Nolan, Mo., 316 S.W.2d 630, 634 [7]; State v. O'Brien, Mo., 252 S.W.2d 357, 360. A real substantive federal question should exist for the transfer of a cause to Banc. The mere allegation of the existence of a federal question is not sufficient. Wilson & Co. v. Hartford Fire Ins. Co., 300 Mo. 1, 254 S.W. 266, 286 [28].

Appellant's motions are overruled.