STATE of Missouri, Respondent,

v.

Robert Gene KEENY, Appellant.

No. 52873.

Supreme Court of Missouri,
Division No. 1.

Sept. 9, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, Norman Humphrey, Jr., Sp. Asst. Atty. Gen., Independence, for respondent.

H. H. McNabb, Jr., Butler, for appellant.

SEILER, Judge.

Defendant was convicted by a jury of first degree robbery and having also been tried under § 556.280,[1] the Second Offender Act, was sentenced by the court to 25 years' imprisonment. He appeals. We affirm.

Defendant contends the trial court erred in admitting into evidence, over defendant's motion to suppress, a gun and testimony as to a pair of trousers found in the car in which defendant was riding, on the ground his arrest was unlawful and hence the ensuing search of the car was also unlawful.

A filling station located on the west side of U.S. Highway 71 in Butler, Missouri, near the south edge of town, was held up about 3:00 a.m. The attendant, William Coke, Jr., heard a car drive up and stop at the rear of the station. He saw a man walking fast, come around the south side of the station, enter the front door with a gun in his hand, come over to where Coke was seated at a desk, stick the gun at him and say, "Take it easy, Pop" and at the same time reach in Coke's right shirt pocket and take a roll of $1 and $5 bills, about $175. The man had on a white shirt and light trousers. The man then left the station, went out of sight toward the car at the rear, and Coke heard the car leave. Coke stepped to the door and saw the car get on the highway and start south. He saw it was a black convertible, with a white top, had round taillights and the first numeral on the license was 3. Coke called the police dispatcher and then his boss.

City policeman Walter Grimes received a call from the dispatcher within a few minutes that the filling station had been robbed. He went there at once. The station attendant told him the person who robbed him had a blue steel pistol and wore tan pants and left in a black convertible with a white top, round taillights, loud mufflers and the first numeral in the license was a 3. A truck driver who arrived at the station about the same time as the policeman said he had just entered Butler from the east on Highway 52 and had met no car fitting this description. Grimes thereupon started out in his police car, went a few blocks south on U.S. 71 and then turned west on Highway 52, looking for the car. When he was 7 or 8 miles west of Butler he first saw taillights ahead. This was about 16 minutes after he first received the call about the robbery. He reported by radio to his dispatcher and kept going. As he got closer he saw the car was a black convertible with a white top, round taillights and the first numeral in the license was a 3. He could see there were two persons in the car. He stopped it with his siren and red light. This was about 10½ miles west of Butler, apparently within 4–5 miles of the Missouri-Kansas line. The defendant was riding in the front seat on the passenger's side. Grimes made the occupants get out, put their hands on the top of their car, got their names, radioed this to the dispatcher and then handcuffed each man. He made a quick search of each man for hard objects and then made a quick search of the car. He found two $1 bills, one torn, lying on the front seat. He found a hand gun, .22 caliber, under the front seat on the driver's side. This gun was introduced into evidence. He also found a pair of tan colored pants, partly in view, under the front seat

---

1. All statutory references are to RSMo 1959, V.A.M.S.

on the passenger's side. There was an open suitcase on the rear seat on the right side, containing clothing and a box of .22 caliber ammunition. The defendant was wearing a white shirt and dark trousers. Grimes took the two men back to the filling station. Coke, the attendant, identified defendant as the man who robbed him and the men were then taken to the city jail.

There was no evidence as to ownership of the car.

This arrest was lawful and this being so, the ensuing search of the automobile as here described, was lawful, as incident thereto. The fact that policeman Grimes was outside his jurisdiction does not make the arrest unlawful under the circumstances before us. A private citizen could lawfully have proceeded as Grimes did. The facts are that there was a robbery; within a few minutes after it occurred, Grimes learned from a reliable source that the perpetrator was a man with a gun who left the scene in a particular style and color car, with certain type taillights and with a license in which the first numeral was a 3. Grimes learned it apparently had not gone east on Highway 52. He decided to look for it on Highway 52 to the west, the direction of the Missouri-Kansas state line. Within 16 minutes from the time he was first called about the robbery he overtook such a car. It was then about 3:15 a.m. Under these circumstances, Grimes had reasonable grounds to believe that the men in the car were the ones who committed the robbery and could lawfully arrest them without warrant, Ker v. State of California, 374 U.S. 23, 34–35, 83 S.Ct. 1623, 10 L.Ed.2d 726; State v. Noland (Mo.Sup.) 229 S.W. 198, 199; State v. Berstein (Mo.Sup.) 372 S.W. 2d 57, 59; State v. Brown (Mo.Sup.) 291 S.W.2d 615, 619; State v. Campbell (Mo. Sup.) 262 S.W.2d 5; State v. Peters (Mo.

Sup.) 242 S.W. 894, 896; State v. Parker (Mo.App.) 378 S.W.2d 274, 282. This contention of defendant is overruled.

In support of his motion at the close of the voir dire examination to discharge the jury panel, defendant offered before the court a copy of the Bates County Democrat of July 29, 1965, which contained a news story of the arrest of the suspects, with a photograph of the two men, in handcuffs, as they were being transferred from the city jail. The news story gave the filling station attendant's account of what happened and told about Grimes finding and arresting the two men. It also said that defendant had served three terms in the Texas state penitentiary for burglary, larceny and forgery and that his companion had recently been released from the Missouri state penitentiary and had served eight prison terms for various crimes, including armed robbery. The source of this information, according to the news story, was the city marshal. Such prior criminal record would be inadmissible before the jury because defendant did not testify. Publication of such information in a given case might well operate to interfere with the judicial process,[2] but the question is whether it deprived defendant of a fair and impartial jury in the case before us. Here, upon an examination of the voir dire questioning and responses, we do not believe it appears that the article prejudiced or biased the minds of the jurors, § 546.150. Although fourteen jurors remembered reading something about it in the Bates County Democrat at the time of the occurrence, none was able to recall any of the details or appeared to have a clear recollection of the article, and none had formed any opinion as to guilt or innocence of the defendant. Defendant's counsel was fearful that hearing the trial evidence would refresh their recollections as to what they had read, which would mean they would recall the statement about

2. For instance, where the publication of the information occurs so close to the time of trial that the inadmissible details are still fresh in the minds of the jury panel.

the prior convictions, a matter about which, understandably, counsel was unwilling to ask the prospective jurors about directly. But no juror was sure that if he heard the evidence it would refresh his recollection as to what he read in the article, although two thought it might, which was the strongest any juror expressed himself on this. The trial, we note, was held November 22, 1966, almost sixteen months after the newspaper article was published. Under these circumstances, we cannot say the trial court erred in refusing the discharge of the entire jury panel, and we overrule this contention of defendant; annotation, 3 L.Ed.2d 2004–2011; State v. Spencer, 355 Mo. 65, 195 S.W.2d 99, 102; Rizzo v. United States (C.C.A.8) 304 F.2d 810, cert. den. 371 U.S. 890, 83 S.Ct. 188, 9 L.Ed.2d 123.

■ Defendant contends he should have been discharged under § 545.920 and related statutes. The circuit court of Bates County has three regular terms a year, § 478.275. The information was filed October 11, 1965, during the October term. Counsel was appointed the same day and 10 days granted to file motions, which were filed October 21, argued November 5, and overruled December 1, 1965, on which date the state was granted 10 days in which to file an amended information, which was not filed until February 3, 1966. Defendant's motions were refiled February 7, 1966, the first day of the February term, and overruled on the same date, whereupon defendant was arraigned to the amended information and pleaded not guilty. The case was thereupon set for trial for February 26, 1966. On February 19, defendant filed application for disqualification of judge, which was called up and sustained on February 26 and the clerk instructed to request assignment of a judge to hear the case. On April 1, 1966, which was during the February 1966 term, Judge Hayes was assigned to hear the case. On May 31, 1966, the prosecutor wrote Judge Hayes for a trial date. Judge Hayes stated he had a heavy docket in Pettis and Cooper

counties that he suggested a trial date in September but it could not be worked out and that he could not find a date for trial until the November 22, 1966 setting, which was in the October 1966 term. The record is silent as to what, if anything, occurred in court during the May 1966 term. The trial took place in the third term after the original information was filed and therefore, by the terms of the statute, defendant was ·not ·entitled to a discharge under § 545.920.

■ Defendant was confined in the county jail commencing July 22, 1965, and remained there at all times until he was sentenced. He cites § 545.850, providing that in cases where the defendant is confined in jail two months before the regular term in which he is to be tried, the jailer is required to inform the judge, who, "if he shall be satisfied that a trial of such persons so confined can be had thereat, and the public good require, shall call a special term of court for the trial of such prisoner." However, the record is silent as to whether the judge was satisfied that a trial could have been had at a special term if called or that the public good required it.

We conclude that defendant was not entitled to his discharge under the statutes mentioned and overrule this contention.

■ Defendant also contends he was denied a speedy trial under the federal and state constitutional provisions. On its face, the time from arrest July 22, 1965 to trial November 22, 1966, in Bates County, is a long time in getting to trial. It took the state two months after the transcript was filed from the magistrate court to file an information. But the next 50 days were spent on defendant's motions. Then leave of 10 days was granted to file an amended information, which the state was 54 days late in filing. However, after the case on February 7 was set for trial for February 26, 1966 (which would have been four and one half months after the original information was filed), defendant on February 19 filed an application for

disqualification of judge. This defendant was entitled to do, but it inevitably brought about delay and the special judge, who was not assigned by this court until April 1, was unable, due to his prior commitments, to find an open date until November 22, 1966. The record here is not a model one on the matter of a speedy trial, but under the circumstances we do not believe defendant's constitutional rights have been infringed, State v. Thompson (Mo.Sup.) 414 S.W.2d 261, 267; State v. Hicks, 353 Mo. 950, 185 S.W.2d 650, 651, and we overrule the contention.

Our examination of the portions of the record required by Rule 28.02, V.A.M.R., shows no error therein.

Judgment affirmed.

All concur.